**KROGER TEXAS LIMITED PARTNERSHIP and Robert Moody, Appellants,**

v.

**Theresa SUBERU, Appellee.**

**No. 05–02–00818–CV.**

Court of Appeals of Texas, Dallas.

Aug. 18, 2003.

Donna C. Peavler, Amber Leah Slayton, Uloth & Peavler, L.L.P., Dallas, for Appellants.

Thomas B. Cowart, Law Office of Windle Turley, P.C., Thomas J. Stutz, Turley & Stutz, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and FRANCIS.

## OPINION

Opinion By Justice FRANCIS.

Theresa Suberu was leaving a Kroger grocery store when an employee stopped her and accused her of attempting to steal a basket of groceries. A jury ultimately acquitted Suberu of the shoplifting charge, and Suberu sued Kroger Texas Limited Partnership and assistant store manager Robert Moody (collectively "Kroger") for malicious prosecution and intentional infliction of emotional distress. The jury found in Suberu's favor on both claims and awarded her actual and exemplary damages. The trial court rendered judgment in accordance with the jury's verdict, and Kroger appealed.

In seven issues, appellants complain about the legal and factual sufficiency of the evidence to support the jury's findings on liability and damages, evidentiary rulings, and jury charge error. We resolve all issues against appellants and affirm the trial court's judgment.

## Factual Background

Suberu testified she went in a Kroger grocery store in Garland to pick up her prescription and went directly to the pharmacy. Pharmacy technician Karrah Parkey recognized Suberu, thought she was there to pick up her husband's prescription, and obtained that medication. Suberu knew her prescription cost about $50, but she did not know the cost of her husband's and asked Parkey for the amount. After Parkey gave her a "rough estimate," Suberu said she was going to her car and would be "right back." Suberu estimated she was at the pharmacy counter two to three minutes.

As Suberu approached the exit doors leading to the store's foyer, she heard someone yell "stop." Suberu looked back and saw a female Kroger employee, identified as front end manager Kelli Weir, walking quickly to the door. Suberu stopped to "make way" for Weir whose pace was quickening as she approached the door. Weir stopped in front of Suberu and said, "You are with them." Suberu, confused, looked to see who Weir was talking about. Weir then said, "Those two people that just left, you are with them." Suberu saw two Caucasian women walking in front of her, but Weir did not stop them. Suberu explained to Weir she was alone in the store, had come from the pharmacy, and was headed to her car to get more money. Weir "kind of held" Suberu, and the two women began yelling at each other. After a couple of minutes, a second store employee, sacker Major Belton, approached. Weir told him to get Moody.

As Suberu and Weir moved back into the store, Suberu explained to Weir that she had just arrived at the store to pick up a prescription and urged Weir to check her story with the pharmacy. When Moody approached, Weir told him that she "caught [Suberu] shoplifting." Again, Su-

beru explained why she was in the store and urged Moody to check her story with the pharmacy. Suberu, Weir, and Moody went to the office, which was located next to the pharmacy, where she continued to plead with them to check her story. As Weir and Moody left the office, Suberu said Weir threatened to send Suberu to jail "for a very long time." Suberu said she was crying and shaking and "couldn't believe what was happening."

When a police officer entered the office, Suberu initially "felt a bit of relief" because she thought the officer would confirm her story. Instead, the officer told her she had been accused of shoplifting. Moody came back with a list of items that Suberu purportedly tried to steal and told the police Kroger wanted to prosecute. The police handcuffed Suberu, led her through the store, and took her to jail. Suberu was embarrassed, humiliated, and ashamed. She maintained at trial that she did not have a grocery cart that day because she was not shopping and said she never saw the basket of groceries that Weir accused her of trying to steal. She later explained that Weir may have "pushed something out of the way" as they reentered the store.

In contrast to Suberu's testimony, three Kroger witnesses, all employees at the time of the incident, testified that they saw Suberu attempting to leave the store with a cart of unpaid groceries. Weir described the night of the incident as "very busy." She first noticed Suberu because she was blocking traffic. Weir said Suberu had a basket and "kept staring" at her. A couple of minutes later, Weir saw Suberu leaving the store with the basket. Suspicious that only a portion of the groceries in the basket had been sacked, Weir "calmly" walked after Suberu, stopped her in the foyer, and asked for a receipt. When Suberu could not produce a receipt, Weir asked her to come back in the store. Weir called for Belton and checker Matt Helwig to assist her.

During the incident, Weir said Suberu repeatedly called her "crazy," but Weir denied ever raising her voice to Suberu or yelling. She also denied threatening to have Suberu jailed for a long time. Weir said she was "not sure" whether Suberu told her that she had been in the pharmacy. Weir told the jury she clearly saw Suberu pushing the basket and that Suberu never denied the basket was hers. Weir said at least two other customers were in front of Suberu as she was leaving the store but she did not know whether they had grocery carts.

Belton, who was sacking groceries, said he first saw Suberu in the pharmacy area with her hands on a grocery cart. Some of the groceries were sacked, and some were not. A couple of minutes later, Weir yelled at him as she was running to the door to prevent Suberu from leaving the store with the cart. Belton went to assist Weir. Contrary to Weir, Belton said Suberu denied that the basket was hers.

Kroger also offered Helwig's deposition testimony. Helwig, who was scanning groceries, testified he first saw Suberu when she entered he store. He next saw Suberu walking out of the pharmacy. A minute later, he heard Weir yell, "Stop her." According to Helwig, Suberu had a basket and no other person was in the vicinity.

### Legal and Factual Sufficiency

■ In issues one, two, and five, Kroger contends the evidence is legally and factually insufficient to support the jury's answers to liability and actual damages questions. A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to

support the adverse finding. *Dallas County v. Holmes,* 62 S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983)). When reviewing a no evidence point, we consider only the evidence supporting the finding and disregard all evidence to the contrary. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002). If there is any evidence of probative force to support the jury's finding, the no evidence issue must be overruled and the finding upheld. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997).

When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Holmes,* 62 S.W.3d at 329. In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict only if the evidence supporting the jury finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In making this review this Court is not a fact finder, and we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Evreste v. Comm'n for Lawyer Discipline,* 76 S.W.3d 184, 195 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### A. Malicious Prosecution

In its first issue, Kroger argues the evidence is legally and factually insufficient to support the jury's finding that it maliciously prosecuted Suberu. We begin by addressing a novel premise underlying Kroger's sufficiency challenge and its briefing of this issue. Kroger asserts this Court, when reviewing the evidence for legal or factual sufficiency, may not consider Suberu's testimony because it was not corroborated by other evidence. In other words, Kroger asserts that in a malicious prosecution case, a plaintiff cannot prevail if the only evidence she presents is her own. As support, Kroger relies on an opinion from the El Paso Court of Appeals, *Digby v. Texas Bank,* 943 S.W.2d 914, 922 (Tex.App.-El Paso 1997, pet. denied). Even if *Digby* can be given as broad an interpretation as Kroger suggests, we cannot agree with Kroger.

Although Kroger urges this Court to disregard evidence Kroger believes is not credible, in a jury trial, it is the jury that determines credibility issues and the weight to be given to any particular piece of evidence. While we recognize that actions for malicious prosecution are not favored in the law, such a statement is "far too vague to serve as an analytical tool." *See Browning-Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 291 (Tex.1994). If the elements of malicious prosecution are proved, liability is established. *Id.* In reviewing the evidence, we must keep in mind that "[e]ven a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging the reporting of criminal conduct." In doing so, we will apply well-established law and will not hold Suberu to a more stringent standard in proving her case.

To prevail on her malicious prosecution claim, Suberu had to establish (1) a criminal prosecution was commenced against her; (2) Kroger initiated or procured the prosecution; (3) the prosecution terminated in Suberu's favor; (4) her innocence; (5) Kroger lacked probable cause to instigate the prosecution; (6) Kroger acted with malice in bringing the prosecution; and (7) she suffered damages. *See Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 517 (Tex.1997). Kroger contests the proof of elements 2, 4, 5, and 6.

### Kroger initiated or procured the prosecution

■■■ A person initiates a criminal prosecution if he makes a formal charge to law enforcement. *Lieck,* 881 S.W.2d at 292. A person procures a criminal prosecution if his actions are enough to cause the prosecution, and, but for his actions, the prosecution would not have occurred. *Id.* A person does not procure a prosecution when the decision whether to prosecute is left to the discretion of another person, including a law enforcement official or the grand jury, unless the person provides information he knows is false. *Id.*

Kroger argues that it neither initiated nor procured Suberu's prosecution. Kroger contends there is no evidence it made a formal charge to law enforcement officers and that the decision to prosecute Suberu was solely in the discretion of the district attorney.

■■■ With respect to whether Kroger initiated prosecution, Kroger contacted the police about the incident and Moody subsequently "signed the police report or whatever they had me sign" on behalf of Kroger. Additionally, Suberu testified that Moody told the police that Kroger wanted to prosecute Suberu for the incident. From this evidence, we conclude a jury could have determined that Kroger filed a formal charge against Suberu.

As for whether Kroger procured prosecution, even if we assume the evidence shows the district attorney had sole discretion to prosecute, the jury by its verdict determined that Kroger provided information it knew to be false. The dispositive issue in this case was whether Suberu pushed a cart containing groceries she had not paid for as she left the store. The jury heard competing testimony on this issue but by its answer, found that Suberu did not have a grocery cart as she was leaving the store and necessarily believed that, in accusing Suberu, Weir knowingly provided false information. Under the charge given, the jury could not have believed that Weir was merely mistaken. We conclude there is more than a scintilla of evidence to prove Kroger initiated or procured Suberu's prosecution and, having reviewed all the evidence, we cannot say the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.

### Suberu's innocence

■■■ The fourth element required Suberu to prove that she was innocent of shoplifting. Suberu testified she did not attempt to leave Kroger with a basket of groceries, and the jury believed her. Despite Kroger's argument that it produced evidence refuting Suberu's explanation about why she left the store and why she had money in her car on the day in question, Suberu's assertion of innocence is some evidence of probative force on this element providing legally sufficient evidence to support the jury's finding of innocence.

At trial, Suberu testified that before she went to Kroger, she went to a Hertz rental car office to get reimbursement for a garage door opener left in a rental car and

subsequently lost by Hertz. She said Hertz paid her in cash, and she put the money in the glove compartment to give to her husband, who had paid for the new garage door opener. When Parkey told her the amount needed for the two prescriptions, she went to the car to get more money and only later learned that she had enough in her purse to pay the bill.

Kroger presented evidence that Hertz's policy is that lost items are the customer's responsibility. Kroger argues Suberu's testimony was inconsistent as to whether (1) there was a basket of groceries, (2) she and her husband kept their money separate, and (3) she normally kept money in the car. The jury was charged with making credibility determinations about any conflicts in the evidence and having reviewed all the evidence, we cannot say they jury's finding of innocence was so against the great weight and preponderance of the evidence as to be manifestly unjust.

*Probable cause to instigate prosecution*

■ The fifth element required Suberu to prove Kroger lacked probable cause to instigate the prosecution. The probable cause determination asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instigated. *Richey,* 952 S.W.2d at 517. An initial presumption exists in malicious prosecution cases that the defendant acted reasonably, in good faith, and had probable cause to initiate the proceedings. *Id.* That presumption disappears once a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Id.* The burden then shifts to the defendant to offer proof of probable

cause. *Id.* When the facts underlying the defendant's decision to prosecute are disputed, the trier of fact must weigh evidence and resolve conflicts to determine whether probable cause exists, as a mixed question of law and fact. *Id.*

■ Although we begin with the presumption that Kroger acted with probable cause, Suberu offered evidence that she had done nothing to warrant being stopped as she was leaving the store. Specifically, Suberu testified she was in the grocery store for only a few minutes to obtain a prescription. She was leaving the store to get money from her car when she was stopped by Weir and accused of shoplifting a grocery cart of goods. Suberu testified she never had a cart the entire time she was in the store and, in fact, did not see the grocery cart she was accused of stealing. Her husband testified that Parkey, the pharmacy technician, told him that she did not see Suberu with a grocery cart. This evidence was sufficient to rebut the presumption that Kroger acted reasonably, in good faith, and with probable cause to initiate the proceedings.

■ To offer proof of probable cause, Kroger presented the testimony of three former Kroger employees—Weir, Belton, and Helwig—who said they saw Suberu leaving the store with a cart of unpaid groceries. While Kroger characterizes these people as "disinterested witnesses," we question whether the fact these witnesses no longer work for Kroger truly makes them disinterested in this case. In particular, Weir and Belton were to some degree actively involved in Suberu's arrest and testified at the criminal trial. We cannot conclude they were without any interest in the case. *See Carothers v. Moore,* 183 S.W.2d 987, 988 (Tex.Civ.App.-Galveston 1944, no writ).

Regardless, the weight to be given a witness's testimony as well as assessing its

credibility was for the jury to determine. Based on the charge, the jury could not have believed Weir was mistaken and, in fact, nothing in Weir's testimony suggests that she believed she could have been mistaken as to whether Suberu was stealing groceries. The jury was specifically instructed on the definition of probable cause. Given this instruction, the evidence presented, and the jury's finding, the jury apparently believed Weir did not see Suberu with a basket when she stopped her and could not have had an honest and reasonable belief that a crime was being committed.

In reaching this conclusion, we reject Kroger's assertion that the supreme court's decision in *Richey v. Brookshire Grocery Co.* mandates a different result. In *Richey,* it was undisputed that the plaintiff had placed a pack of cigarettes in his pocket and left the store without paying for them. Richey testified that he inadvertently put them there and offered to pay. The only probable cause issue was the reasonableness of the grocery store's belief as to Richey's state of mind at the time of the appropriation. Even Richey agreed that his behavior—picking up the cigarettes and concealing them—could lead someone to believe he was shoplifting. *See Richey,* 952 S.W.2d at 518–19. Unlike Richey, Suberu denied taking anything from the store without paying for it.

Viewing the evidence in the light most favorable to the verdict, more than a scintilla of evidence exists to support the jury's finding of lack of probable cause. Although evidence exists that could support a different conclusion, we do not substitute our judgment for that of the fact finder. We conclude the jury's finding of lack of probable cause was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

*Malice in bringing the prosecution*

 The sixth element required Suberu to prove that Kroger acted with malice in bringing the prosecution. Malice has been defined as ill will or evil motive or such gross indifference or reckless disregard for the rights of others as to amount to wanton and willful action, knowingly and unreasonably done. *Luce v. Interstate Adjusters, Inc.,* 26 S.W.3d 561, 566 (Tex.App.-Dallas 2000, no pet.); *Ellis County State Bank v. Keever,* 870 S.W.2d 63, 69 (Tex.App.-Dallas 1992), *aff'd in part and rev'd in part on other grounds,* 888 S.W.2d 790 (Tex.1994). To establish malice, the plaintiff does not have to prove the defendant acted with personal spite or ill will. It is sufficient to show the defendant committed wrongful acts in reckless disregard of another's rights and with indifference as to whether that party would be injured. *Luce,* 26 S.W.3d at 566; *Keever,* 870 S.W.2d at 69. Malice may be established by direct or circumstantial evidence. *Keever,* 870 S.W.2d at 69. Because it is difficult to prove a person's state of mind, malice can be inferred from lack of probable cause. *Id.*

 Having found a lack of probable cause, malice can be inferred. Weir testified she stopped Suberu because she was pushing a cart of groceries out of the store without paying. But Suberu testified, and the jury believed, she did not have a grocery cart. Suberu testified Weir threatened to have her jailed for "a long time." The testimony at trial was that Weir told at least two people—the police officer who answered the call and Parkey—that she chased Suberu onto the parking lot to stop her yet the evidence was undisputed that Suberu was stopped in the store foyer. Finally, Suberu testified she believed Weir stopped her because Suberu is black. Two white women were nearby, but Weir did not stop them. From the evidence pre-

sented, a jury could rationally conclude that Kroger acted in reckless disregard of Suberu's rights and with indifference as to whether she would be injured. We conclude the evidence is legally and factually sufficient to support the jury's malice finding. We resolve the first issue against Kroger.

### Mental anguish damages

■ In its fifth issue, Kroger challenges the mental anguish damages arguing there is legally and factually insufficient evidence of compensable mental anguish. To support an award of mental anguish damages, a plaintiff must either present "direct evidence of the nature, duration, and severity of [her] mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine," or "evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Latham v. Castillo,* 972 S.W.2d 66, 70 (Tex.1998) (citing *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995)). Intentional or malicious conduct may be a significant factor in determining whether mental anguish damages are proper. *City of Tyler v. Likes,* 962 S.W.2d 489, 495–96 (Tex.1997).

■ Suberu was arrested, handcuffed, and led through Kroger to a police car where she was taken to jail and held for four hours. When she got home, she stayed in the bathtub all night because she could not sleep. For the next five to six months, Suberu said she was unable to grocery shop for fear she would be wrongfully accused of committing a crime. She blamed herself and said she could not sleep. She had to report her arrest when applying for United States citizenship. Future job applications would have to include information about her arrest. The incident left her embarrassed, humiliated,

and ashamed. Even after her acquittal, she said she still felt hurt and angry.

Suberu's husband, Michael, testified that on the night she was arrested, she called him "very upset." When he picked her up, Suberu was "in a state of shock." Michael testified that the three months between the arrest and the criminal trial were very stressful because his wife had been labeled a thief. He said she would not cook, do laundry, or do grocery shopping. Suberu refused to go anywhere and did not want to return to work. At the time of trial three years later, Michael said they were "still working through it." Finally, Michael said he and his wife had been trying for seven years to have a baby and, on the day of the incident, Suberu was picking up fertility medicine. While he does not hold Kroger responsible for their inability to conceive, Michael said the stress of the incident has complicated an already delicate situation.

We conclude this evidence is legally and factually sufficient direct evidence of the nature, duration, and severity of Suberu's mental anguish, establishing a substantial disruption in her daily routine. Kroger purports to alternatively challenge the factual sufficiency of the award itself but Kroger's entire statement on this issue is, "Alternatively, it is factually insufficient to justify an award of $28,000." Kroger cites two cases without any analysis to the specific facts of this case. This is insufficient to raise an issue on the excessiveness of the award. *See* Tex.R.App. P. 38.1. We resolve the fifth issue against Kroger.

Our disposition of issues one and five makes it unnecessary to address Kroger's second issue that the evidence is legally and factually insufficient to support the jury's affirmative findings on Suberu's claim for intentional infliction of emotional distress. *See* Tex.R.App. P. 47.1.

■ In its third issue, Kroger contends it conclusively established its affirmative defense of privilege under article 18.16 of the Texas Code of Criminal Procedure but because Kroger does not point us to any place in the record where this theory was presented to the trial court, the issue is waived. Regardless, the evidence was conflicting on the events surrounding the stop of Suberu and Kroger did not conclusively establish that it had "reasonable ground" to believe property was stolen. *See* TEX.CODE CRIM. PROC. ANN. art. 18.16 (Vernon 2003). We resolve the third issue against Kroger.

### Punitive damages

In its fourth issue, Kroger complains the evidence is legally and factually insufficient to show it acted with malice, a prerequisite for the award of exemplary damages, which in this case was $50,500. To establish malice as a basis for an award of exemplary damages, Suberu had to prove by clear and convincing evidence:

(A) a specific intent by the defendant to cause substantial injury to the claimant; or

(B) an act or omission:

(i) which when viewed objectively from the standpoint of the actor at the time of the occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 41.001(7), 41.003(a)(2) (Vernon 1997)

■ In conducting a legal or factual sufficiency review under the "clear and convincing" standard required to sustain a finding of malice, we must determine whether a reasonable trier of fact could reasonably form a firm belief or conviction about the truth of the State's allegations. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002) (factual sufficiency).

■ In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding and will assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *J.F.C.*, 96 S.W.3d at 266.

■ In a factual sufficiency review, we must give due deference to evidence that a fact finder could reasonably have found clear and convincing. *Id.* We should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not have reasonably formed a firm conviction or belief, then the evidence is factually insufficient. *Id.*

■ Based on the record and the charge given in this case, the jury apparently believed Suberu did not have a grocery cart as she was leaving the store and that Kroger knew this, yet detained and prosecuted her anyway. Providing information which is likely to lead to the criminal prosecution of an individual, when one knows the information to be false, involves an extreme risk of harm to that individual. While we acknowledge the record contains evidence impeaching Suberu's testimony on collateral matters, it was the jury's responsibility to determine how that evidence affected the overall case. Review-

ing the evidence under the appropriate standards, we conclude a reasonable trier of fact could have formed a firm conviction or belief that Kroger acted with malice.

▮ Kroger next argues it cannot be liable for exemplary damages because Suberu failed to offer any evidence that Moody or Weir was a vice principal of Kroger, a requirement when holding Kroger liable for punitive damages for their misconduct. A vice principal encompasses (1) corporate officers, (2) those who have authority to employ, direct, and discharge servants of the master, (3) those engaged in the performance of nondelegable duties of the master, and (4) those to whom the master has confided the management of the whole or a department or a division of the business. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex.1998).

▮ Moody, who had been employed by Kroger for thirty years, identified himself at various times as the "assistant manager," "the manager," "the boss," the "proprietor," and the "manager in charge." He referred to the other workers as "my" employees and "my" managers. He had the authority to stop suspected shoplifters and had given Weir that same authority. Moody also signed the "police report or whatever they had me sign" on behalf of Kroger.

Weir was a department head. As front-end manager, she was responsible for "[e]verything that is concerned with the front end. Keep an eye on everything, see what comes in and out the door, in and out the registers." She was also responsible for overseeing the courtesy clerks and cashiers.

This evidence was legally and factually sufficient to support a deemed finding that both Moody and Weir were vice principals of Kroger rendering Kroger liable for punitive damages for their misconduct.

Even if Weir was found not be a vice principal, Moody, acting on Kroger's behalf and as a vice principal, ratified and adopted her misconduct.

Finally, Kroger ends this issue with the bare assertion that the evidence was "insufficient to justify an award of $50,500 exemplary damages against the Kroger Defendants." Kroger made no attempt to analyze its assertion with regard to the factors outlined in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Because we conclude this contention is inadequately briefed, we do not address it and resolve the fourth issue against Kroger. *See* Tex.R.App. P. 38.1(h).

### *Evidentiary Issues*

In its sixth issue, Kroger argues the trial court made harmful erroneous evidentiary rulings. In particular, Kroger contends the trial court erred in excluding (1) testimony of an assistant district attorney, (2) car rental documents that refuted Suberu's innocence, and (3) evidence of Kroger's negative net worth. Additionally, Kroger complains the trial court improperly allowed Suberu's husband to give expert opinion testimony.

▮ Whether to admit or exclude evidence is within the trial court's sound discretion. *Nat'l Liability & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). On appeal, we review a trial court's evidentiary decisions by an abuse of discretion standard. *Id.* A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Unless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex.2000). To show

harm, excluded evidence must be controlling on a material issue and not cumulative of other evidence. *Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex.1995) (per curiam).

We begin with Kroger's complaints about the exclusion of evidence. First, Kroger complains the trial court should have allowed the testimony of assistant district attorney John Hopping, who prosecuted Suberu. According to Kroger, Hopping would have testified (1) Kroger had probable cause to stop Suberu, (2) that Kroger did not initiate or procure the prosecution because the District Attorney had the "unilateral authority" to dismiss or prosecute the case, and (3) that no false information was provided to the DA nor was any material information withheld.

■ We agree with Suberu that this evidence was not admissible. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. TEX.R. EVID. 602. In this case, Hopping had no personal knowledge of the events that transpired in the Kroger store on the night Suberu was arrested. His testimony would have assumed that Kroger's witnesses were truthful. With respect to whether Kroger initiated or procured prosecution, Suberu alleged that Kroger intentionally provided false information to the police, and the jury believed Suberu. Excluding Hopping's testimony regarding "sole discretion" to prosecute was harmless in light of the allegation—and the jury's determination—that Kroger knowingly provided false information that Suberu attempted to steal a cart of groceries.

■ Second, Kroger argues the trial court erroneously excluded documents from Hertz that would have refuted Suberu's claim of innocence. Specifically, Suberu testified she was going to her car to get money that she obtained from Hertz, who paid her for a garage door opener that she left in a rental car. The excluded documents reflected Hertz's policy that lost items are the responsibility of Hertz customers.

At trial, the Hertz representative testified that the contract with customers indicates "[w]e're not responsible for any items that are left in the vehicle. That's—that's 100 percent customer responsibility." Consequently, we conclude the excluded evidence was merely cumulative of this testimony. No harm is shown.

■ Third, Kroger argues the trial court erred in excluding evidence of Kroger's negative net worth. Kroger offered Charlie C. Tyner, director of security for the Northern district stores of the Texas marketing area, to testify about net worth. In a hearing outside the jury's presence, Tyner testified he had personal knowledge of the company's net worth in 2000. On cross-examination, Tyner said he obtained the information from the risk management department. He did not know how the number was calculated and had no documentation. When asked whether he had anything to do with finances, Tyner said his involvement was "very limited." He had not evaluated or offered input regarding the net worth and was solely relying on what he was told by someone else. Given the fact that Tyner could do nothing more than recite a number, we cannot conclude the trial court abused its discretion in refusing to allow Tyner to testify about Kroger's negative net worth.

■ Finally, Kroger complains the trial court erred in allowing Suberu's husband, Michael, to give "expert opinion" evidence as to whether Kroger acted properly. At trial, Michael was asked if he felt Kroger acted properly that night. Kroger objected, and the objection was overruled.

Michael answered that he did not. Michael was then asked, "Why is that?" Kroger did not object to this question, and Michael responded. In its brief, Kroger cites this answer as the objectionable evidence. Because Kroger did not object to this testimony at trial, its complaint is waived. *See* TEX.R.APP. P. 33.1. We resolve the sixth issue against Kroger.

### Jury Charge

■■■■ In its seventh issue, Kroger complains the trial court erred in failing to include various requested instructions and definitions in the jury charge. The trial court is to submit such instructions and definitions as shall be proper to enable the jury to render a verdict. TEX.R. CIV. P. 277. However, the trial court has considerable discretion in determining the necessity and propriety of explanatory instructions and definitions. *See Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 911 (Tex.2000) (per curiam). The trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction is a correct statement of the law. *White v. Liberty Eylau Indep. Sch. Dist.*, 920 S.W.2d 809, 812 (Tex.App.-Texarkana 1996, writ denied).

■■■■ A trial court's error in refusing an instruction or definition is reversible if it "probably caused the rendition of an improper judgment." TEX.R. APP. PROC., RULE 61.1(a); *Union Pac. R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002). The burden is on the appellant to show probability of harm. *Blonstein v. Blonstein*, 831 S.W.2d 468, 471 (Tex.App.-Houston [14th Dist.] ), *writ denied per curiam*, 848 S.W.2d 82 (Tex.1992) (per curiam). In determining whether an abuse of discretion has occurred, this Court may not substitute its judgment for that of the trial

court deciding only whether the trial court's action was arbitrary and unreasonable. *Multi–Moto Corp. v. ITT Comm'l Fin. Corp.*, 806 S.W.2d 560, 567 (Tex.App.-Dallas 1990, writ denied).

Kroger first complains the trial court erred in excluding the definition of "severe" with the intentional infliction of emotional distress question. Because we have affirmed the jury's finding on malicious prosecution, we decline to address the jury's finding on Suberu's claim for intentional infliction of emotional distress. Kroger's charge complaint with respect to this issue is likewise unnecessary to the disposition of the appeal. *See* TEX.R.APP. P. 47.1.

■■■ Kroger next complains the trial court erred in excluding the definition of "initiate or prosecute" from the malicious prosecution question. Kroger's entire briefing on this issue is three sentences. Even if we assume the trial court erred in excluding the proposed definition, Kroger has made no attempt to explain why the error probably led to the rendition of an improper verdict. Consequently, we conclude this issue in inadequately briefed. *See* TEX.R.APP. P. 38.1. Regardless, it is clear the absence of this definition did not lead to an improper verdict. Considering the charge, the evidence, and the jury's findings, it is clear the jury believed Kroger knowingly provided false information making it immaterial whether the district attorney had sole discretion to prosecute the claim.

■■■■ Finally, Kroger contends the trial court erroneously refused to instruct the jury that "[t]here is a presumption that the defendant acted reasonably, in good faith and had probable cause." We disagree. The sole effect of a presumption is to establish the burden of producing evidence. *Tex. A & M Univ. v. Chambers*, 31

S.W.3d 780, 783 (Tex.App.-Austin 2000, pet. denied). A true presumption operates to invoke a rule of law that compels the jury to reach a conclusion in the absence of evidence to the contrary. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975); *Sanders v. Davila*, 593 S.W.2d 127, 130 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.). Absent the contrary evidence, there is no decision for the jury. Upon introduction of the contrary evidence, the presumption ceases to exist, and the presumption is not to be weighed or treated as evidence by the jury in arriving at its verdict. *Sanders,* 593 S.W.2d at 130.

The presumption in this case did nothing more than place the initial burden on Suberu to provide evidence that Kroger did not act with probable cause. As previously discussed, Suberu presented such evidence. Once she did so, the presumption disappeared. Including a presumption in a jury charge which has been rebutted by controverting facts is an improper comment on the weight of the evidence. *Chambers,* 31 S.W.3d. at 785. Kroger does not cite a single case for the proposition that its proposed instruction was required in this case. We conclude the trial court did not err in refusing to include the presumption instruction in the charge. We reject Kroger's seventh issue.

We affirm the trial court's judgment.