IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0913
════════════
 
Kroger Texas Limited 
Partnership
and Robert Moody, 
Petitioners,
 
v.
 
Theresa Suberu, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 9, 
2004
 
 
Chief Justice Jefferson delivered the 
opinion of the Court, in which Justice 
Hecht, Justice O’Neill, Justice Wainwright, Justice Brister, Justice 
Green, and Justice Willett 
joined.
 
Justice Johnson filed a dissenting 
opinion, in which Justice Medina 
joined.
 
 
 
Theresa 
Suberu sued Kroger Texas Limited Partnership and assistant store manager Robert 
Moody (collectively, Kroger) for malicious prosecution and intentional 
infliction of emotional distress after she was acquitted on misdemeanor theft 
charges arising from an alleged shoplifting incident. The jury returned a 
verdict in Suberu’s favor on both claims, and the trial court signed a judgment 
in conformity with the verdict. The court of appeals affirmed. Kroger argues 
that the evidence is legally insufficient to support liability under each claim, 
and we agree. Accordingly, we reverse the court of appeals’ judgment and render 
judgment for Kroger.
I
Background
 
On the 
evening of March 1, 1999, Theresa Suberu went to a Kroger grocery store in 
Garland to purchase medication. Karrah Parkey, Kroger’s pharmacy technician, 
recognized Suberu as a prior customer, assumed she had come to pick up medicine 
for her husband, Michael, and placed his medicine on the counter. Suberu uses 
cash for all transactions and did not have enough in her purse to pay for both 
her medicine and Michael’s. Therefore, she told Parkey she would retrieve money 
from her vehicle and would return momentarily.
Suberu was 
leaving the store when Kellie Wier, the front-end manager, yelled “Stop!” 
According to Wier, Suberu was pushing a grocery cart full of unsacked goods. 
Suberu, however, testified that she has never used a cart to shop for groceries 
and did not have one that evening. Wier reached Suberu in the foyer, where the 
two had a brief quarrel. Suberu testified that Wier said, “Those two people who 
just left, you are with them,” and “You are going to jail for a long time.” 
Wier, however, denied making those statements. She claims Suberu became hostile 
when Wier asked to see a receipt, and that Suberu kept shouting, “You’re crazy!” 
Suberu testified that she was annoyed because Wier would not listen to her 
explanation for leaving the store.
 
Major Belton, 
another Kroger employee, was bagging groceries when Wier yelled for Suberu to 
stop. Belton testified that he looked up and saw Suberu pushing a cart. He 
watched as Wier questioned Suberu in the foyer, and, when Wier called him over 
to take the cart, he noticed that it contained mostly unsacked groceries. Robert 
Moody, the assistant manager, arrived and discussed the occurrence with Suberu 
and Wier. Moody asked Suberu if she had a receipt, and she replied “No.” Belton 
then wheeled the cart to register three, where Matt Helwig was working as a 
checker. Helwig testified that he, too, saw Suberu pushing the cart out of the 
store. Moody and Wier escorted Suberu to an office, where Moody directed Wier to 
call the police.
Police 
officers arrived ten minutes after receiving Wier’s call. Moody explained the 
events and filled out a shoplifting incident report. Meanwhile, Wier took the 
cart from Helwig’s register and scanned the unsacked groceries. Moody stapled to 
his report a printed list of the scanned items, which totaled $261. While 
sitting in the office, Suberu explained that she had been at the pharmacy and 
was going outside to get cash from her vehicle. Despite these pleas, neither the 
officers nor any Kroger employee checked with the pharmacy.[1] The officers arrested Suberu and 
walked her out in handcuffs.
Suberu 
testified that she felt humiliated and has been traumatized as a result of the 
ordeal. Her husband, Michael, said she was “in a state of shock” when he picked 
her up at the jail four hours after her arrest. Suberu could not sleep that 
night, and was unable to cook, do laundry, and shop for groceries for several 
months. At trial, Michael said he and Suberu were “still working through 
it.”
 
After a jury 
acquitted her on misdemeanor theft charges, Suberu filed the present suit, 
alleging malicious prosecution and intentional infliction of emotional distress. 
The trial court rendered judgment on the jury’s verdict, which found in Suberu’s 
favor on both claims and awarded $500 in actual damages for expenses in 
defending the prosecution, $28,000 for past and future mental anguish, and 
$50,500 in exemplary damages based on the malicious prosecution claim. The jury 
awarded no exemplary damages for intentional infliction of emotional distress. 
The court of appeals affirmed. 113 S.W.3d 588. We granted Kroger’s petition for 
review. 47 Tex. Sup. Ct. J. 1197 (Sept. 13, 2004).
II
Malicious 
Prosecution
 
 
This Court 
has long recognized a cause of action for those subjected unjustifiably to 
criminal proceedings, but has also made clear that the cause of action must 
sometimes yield to society’s greater interest in encouraging citizens to report 
crimes, real or perceived.[2] The elements necessary to prevail on a 
malicious prosecution claim reflect this balance.[3] Thus, the plaintiff must prove not 
only that the defendant commenced criminal proceedings against her and she is 
innocent of the crime charged, but also that the defendant lacked probable cause 
and harbored malice toward her. These latter elements guard against a jury’s 
natural inclination to punish those who, through error but not malevolence, 
commence criminal proceedings against a person who is ultimately exonerated.[4] The probable cause element “asks 
whether a reasonable person would believe that a crime had been committed given 
the facts as the complainant honestly and reasonably believed them to be before 
the criminal proceedings were instituted.” Richey v. Brookshire Grocery 
Co., 952 S.W.2d 515, 517 (Tex. 1997) (citing Akin v. Dahl, 661 S.W.2d 
917, 920 (Tex. 1983), cert. denied, 466 U.S. 938 (1984)). Courts must 
presume that the defendant acted reasonably and had probable cause to initiate 
criminal proceedings. Id. To rebut this presumption, the plaintiff must 
produce evidence that the motives, grounds, beliefs, or other information upon 
which the defendant acted did not constitute probable cause. Id. at 
518.
 
In the court 
of appeals, Kroger challenged the legal sufficiency of the evidence to support 
the second, fourth, fifth, and sixth elements of Suberu’s claim,[5] and her award for mental anguish and 
exemplary damages. 113 S.W.3d 588, 596-601. The court resolved all issues 
against Kroger. Id. at 605. In upholding the jury’s finding on probable 
cause, the court cited Suberu’s testimony that she was in the store for a few 
minutes to obtain a prescription, left to get money from her car, and never had 
a cart. Id. at 598. The court reasoned that it was the province of the 
jury to assess credibility, and the jury apparently found that Wier never saw 
Suberu with a cart. Id. at 598-99. For the reasons considered below, the 
evidence favorable to Suberu is legally insufficient to rebut the presumption 
that Kroger acted reasonably and with probable cause. As this conclusion is 
dispositive, we do not reach Kroger’s remaining challenges to malicious 
prosecution liability and exemplary damages.
A
Standard of 
Review
 
In reviewing 
a verdict for legal sufficiency, we credit evidence that supports the verdict if 
reasonable jurors could, and disregard contrary evidence unless reasonable 
jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 
2005). A challenge to the legal sufficiency of evidence will be sustained when, 
among other things, the evidence offered to establish a vital fact does not 
exceed a scintilla. Id. at 810 (citing Robert W. Calvert, “No 
Evidence” & “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). 
Evidence does not exceed a scintilla if it is “‘so weak as to do no more than 
create a mere surmise or suspicion’“ that the fact exists. Ford Motor Co. v. 
Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem, 
Inc., 650 S.W.2d 61, 63 (Tex. 1983)).
B
Application
 
Suberu points 
to the following evidence as supporting a finding that Kroger lacked probable 
cause:
 
1. Kroger’s 
failure to check Suberu’s explanation with the pharmacy technician before 
initiating criminal proceedings;
 
2. 
Inconsistencies in Karrah Parkey’s testimony regarding whether she saw Suberu 
with a cart; and
 
3. Suberu’s 
testimony that she did not have a cart.
 
 
Starting with 
the first item, it is well settled that a private citizen has no duty to 
investigate a suspect’s alibi or explanation before reporting a crime. 
Richey, 952 S.W.2d at 518 (citing Marathon Oil Co. v. Salazar, 682 
S.W.2d 624, 627 (Tex. App.–Houston [1st Dist.] 1984, writ ref’d n.r.e.)). If the 
acts or omissions necessary to constitute a crime reasonably appear to have been 
completed, a complainant’s failure to investigate does not negate probable 
cause. Id. Thus, the fact that no one investigated Suberu’s explanation 
is not evidence that probable cause was lacking.
The second 
item is irrelevant to whether Kroger had probable cause, because none of the 
Kroger employees spoke to Karrah Parkey before Moody initiated criminal 
proceedings. Parkey’s credibility does not affect whether Kroger, at the time it 
called the police, reasonably believed Suberu was guilty of shoplifting. 
Accordingly, this evidence must be disregarded.
Suberu relies 
primarily on the third item—her testimony that she did not have a cart. In 
contrast to the criminal case, however, here the question is not whether Suberu 
had a cart, but whether Kroger reasonably believed she did. See Richey, 
952 S.W.2d at 517; Akin, 661 S.W.2d at 920-21. Wier, Belton, and Helwig 
each testified that they observed Suberu leaving the store with a cart 
containing items she had not purchased. The law presumes that Kroger honestly 
and reasonably acted on the basis of these observations in reporting Suberu to 
police. See Richey, 952 S.W.2d at 517; see also City of Keller, 
168 S.W.3d at 817 (discussing legal sufficiency where the fact finding examined 
concerns what a party knew or why it took a certain course). Kroger contends 
that Suberu’s evidence is legally insufficient to rebut this presumption. We 
agree.
 
To rebut the 
probable cause presumption, Suberu had to produce evidence that the motives, 
grounds, beliefs, or other information upon which Kroger acted demonstrate that 
it did not reasonably believe Suberu was guilty of shoplifting. See 
Richey, 952 S.W.2d at 518; Akin, 661 S.W.2d at 920. While Suberu’s 
evidence supports the jury’s determination—consistent with her acquittal—that 
she did not steal groceries, it does not establish the absence of probable 
cause. 
The criminal 
law presumes Suberu’s innocence and presents the State with a heavy burden of 
proof for a conviction, because it is more important that the guilty 
occasionally go free than for the innocent to be jailed. In re Winship, 
397 U.S. 358, 372 (1970) (Harlan, J., concurring). The civil law presumes 
Kroger’s good faith and requires Suberu to rebut this presumption, because it is 
more important that a private citizen report an apparent subversion of our laws 
than for the wrongly accused to attain monetary redress from the accuser.[6] These presumptions provide benchmarks 
with which to evaluate this case.
Suberu’s 
acquittal does not prove that Kroger lacked probable cause, just as her arrest 
does not prove her guilt. Her acquittal is not evidence, then, that she was 
unjustifiably subjected to criminal proceedings; it shows only that the 
government did not prove her guilt beyond a reasonable doubt. United 
States v. Watts, 519 U.S. 148, 155 (1997). Because probable cause is 
presumed, Suberu was required to produce evidence that Kroger initiated her 
prosecution on the basis of information or motives that do not support a 
reasonable belief that she was guilty of shoplifting. See Richey, 952 
S.W.2d at 518; Akin, 661 S.W.2d at 920. If there was no such evidence, 
Kroger is entitled to judgment as a matter of law.
 
Suberu was 
Kroger’s regular customer, yet she introduced no evidence of, for example, prior 
bad relations, preexisting debt, racial animus, or any private motivation to 
harm her. There is no evidence that, on the night in question, Wier, Belton, and 
Helwig caucused prior to Suberu’s detention; nor is there evidence that there 
was time for them to confer before recounting their similar observations to 
Moody. Further, there is no evidence that Kroger withheld exculpatory 
information from the police or capriciously enforced its shoplifting policy 
against customers. Although the critical question in this case was Kroger’s 
state of mind, Suberu produced no evidence that Kroger initiated her prosecution 
on the basis of something other than a reasonable belief that she was guilty. 
See City of Keller, 168 S.W.3d at 829-30.
Suberu’s 
testimony does no more than create a surmise or suspicion that Kroger did not 
believe she was guilty of shoplifting, because it merely invites speculation 
that Kroger framed her and lied to the police. This conclusion, however, is no 
more probable than the proposition that Kroger’s employees, each independent of 
the others, mistakenly believed they observed the commission of a crime. We have 
cautioned that, “[e]vidence that is so slight as to make any inference a guess 
is in legal effect no evidence.” Ridgway, 135 S.W.3d at 601 (citing 
Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001)). Unless there is 
evidence rebutting the presumption of probable cause, a prosecution resulting 
from eyewitness identifications that turn out to be incorrect or, at least, 
insufficient to warrant a conviction, does not satisfy the exacting requirements 
for a plaintiff to prevail in a malicious prosecution case.[7]
 
In sum, the 
jury could reasonably conclude, based on her acquittal and her testimony, that 
Suberu did not, in fact, steal groceries. Without more, however, Suberu’s 
innocence is insufficient to support a finding that Kroger lacked probable 
cause. Courts must be especially careful in malicious prosecution cases to 
ensure that sufficient evidence supports each element of liability. Otherwise, 
the fourth element (innocence) automatically swallows the fifth (lack of 
probable cause) and sixth (malice) elements of this claim.
III
Intentional 
Infliction of Emotional Distress
 
 
Kroger also 
challenges the legal sufficiency of the evidence to support its liability for 
intentional infliction of emotional distress.[8] To prevail on this claim, Suberu had 
to prove by a preponderance of the evidence that: (1) Kroger acted intentionally 
or recklessly; (2) its conduct was extreme and outrageous; (3) its actions 
caused her emotional distress; and (4) the emotional distress was severe. 
Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004); 
Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003). A 
defendant’s conduct satisfies the second element only if it is “‘so outrageous 
in character, and so extreme in degree, as to go beyond all possible bounds of 
decency, and to be regarded as atrocious, and utterly intolerable in a civilized 
community.’“ Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993) (quoting 
Restatement (Second) of Torts § 
46 cmt. d (1965)). Conduct that is merely insensitive or rude is not extreme and 
outrageous, nor are “mere insults, indignities, threats, annoyances, petty 
oppressions, or other trivialities.” GTE Sw., Inc. v. Bruce, 998 S.W.2d 
605, 612 (Tex. 1999). 
Meritorious 
claims for intentional infliction of emotional distress are relatively rare 
precisely because most human conduct, even that which causes injury to others, 
cannot be fairly characterized as extreme and outrageous. See Creditwatch, 
Inc. v. Jackson, 157 S.W.3d 814, 815 n.1 (Tex. 2005) (citing cases in which 
conduct was not extreme and outrageous). But despite the danger of fictitious 
claims, the difficulty of measuring damages, and the indeterminacy of its 
proscriptions, intentional infliction of emotional distress can be an effective 
“cause of action for egregious conduct that might otherwise go unremedied.” 
Hoffmann-La Roche, 144 S.W.3d at 447 (quoting Standard Fruit and 
Vegetable Co. v. Johnson, 985 S.W.2d 62, 68 (Tex. 1998)); see, e.g., 
Morgan v. Anthony, 27 S.W.3d 928, 930 (Tex. 2000) (man who stopped to 
assist motorist having car trouble on a rural highway repeatedly blocked her 
escape and harassed her); GTE Sw., 998 S.W.2d at 613-14 (supervisor 
physically and verbally threatened employees over a two-year period). Applying 
the standard of review outlined in Part II A, we turn to the evidence in this 
case.
 
Kroger 
contends that the evidence is legally insufficient to support a finding that its 
conduct was extreme and outrageous. Suberu, however, argues that knowingly 
providing false information to police so that an innocent person is prosecuted 
for shoplifting is extreme and outrageous. While we are inclined to agree that 
Suberu’s premise is sound, her argument is hypothetical in light of the record 
before us. The only evidence that conceivably suggests Kroger and its employees 
knew Suberu was innocent is her testimony that she did not have a cart. In the 
preceding analysis, however, we concluded that her claimed innocence, by itself, 
is insufficient to find that Kroger did not honestly and reasonably believe 
Suberu was guilty. Further, Suberu produced no evidence of prior bad relations, 
racial animus, or other ulterior motives, nor does she allege that Kroger 
subjected her to outrageous or abusive treatment while she was detained on its 
premises. We do not doubt that the incident caused Suberu embarrassment and 
emotional distress, but there is no evidence that Kroger intentionally subjected 
her to such distress knowing she was innocent. Consequently, Suberu’s testimony 
does not exceed a scintilla of evidence and is legally insufficient to support a 
finding that Kroger’s conduct was extreme and outrageous.
IV
Conclusion
The evidence 
is legally insufficient to support a finding that Kroger lacked probable cause 
to initiate criminal proceedings against Suberu for shoplifting, and legally 
insufficient to support a finding that Kroger’s conduct was extreme and 
outrageous. Accordingly, we reverse the court of appeals’ judgment and render 
judgment that Suberu take nothing. See Tex. R. App. P. 60.2(c).
 
 
                        
            
                                    
            
____________________________________
Wallace B. 
Jefferson 
Chief 
Justice
 
OPINION DELIVERED: May 5, 
2006






[1] Karrah Parkey testified that, although she does not 
remember seeing a cart, she heard Suberu “maneuver” a cart over a bump that 
joins carpet around the pharmacy with Kroger’s tile floor.  Suberu’s cross 
examination revealed inconsistencies in Parkey’s testimony but, as explained 
below, Parkey’s testimony is immaterial to our disposition.

[2] See, e.g., Sebastian v. Cheney, 25 S.W. 691, 694 
(Tex. 1894) (“It is important that every citizen should be protected against 
malicious prosecutions, and it is equally important that crimes should be 
punished, in order that the law-abiding citizen may be secure in life, liberty, 
and property.  To make the citizen liable to be mulcted in damages for an 
honest discharge of duty is to give immunity to crime, and to weaken the 
restraining power of the criminal law, thereby endangering the security of 
law-abiding people.”).

[3] In its entirety, the claim for malicious criminal 
prosecution required Suberu to prove by a preponderance of the evidence that: 
(1) a criminal prosecution was commenced against her; (2) Kroger initiated or 
procured that prosecution; (3) the prosecution terminated in her favor; (4) she 
was innocent of the charges; (5) Kroger lacked probable cause to initiate the 
prosecution; (6) Kroger acted with malice; and (7) she suffered damages.  
Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 
1997).

[4] See Restatement (Second) of Torts ch. 29, 
intro. cmt. (1977) (discussing competing social interests and stating that 
“private persons who aid in the enforcement of the law should be given an 
effective protection against the prejudice that is likely to arise from the 
termination of the prosecution in favor of the accused.”).

[5] See supra note 3.

[6] See supra notes 2, 4.

[7] See, e.g., Burrows v. Neiman-Marcus Group, 
Inc., 976 S.W.2d 784, 788 (Tex. App.CHouston [1st Dist.] 1998, no pet.) (no evidence that the 
defendant lacked probable cause where two employees accused the plaintiff of 
using a customer’s lost credit card to make purchases at nearby stores); 
Diamond Shamrock Corp. v. Ortiz, 753 S.W.2d 238, 242 (Tex. 
App.CCorpus Christi 1988, writ denied) (no evidence that the 
defendant lacked probable cause where its employees gave written statements 
alleging the plaintiff was stealing merchandise); Stringer v. Cross, 564 
S.W.2d 121, 122 (Tex. Civ. App.CBeaumont 1978, no writ) (no evidence of malice where a 
man injured in a riot identified the plaintiff as a participant); Deaton v. 
Montgomery Ward & Co., 159 S.W.2d 969, 972 (Tex. Civ. App.CBeaumont 1942, writ ref’d w.o.m.) (probable cause was 
established as a matter of law where the defendant’s employees identified the 
plaintiff as the person who cashed a forged check).

[8] The parties briefed this issue in the court of appeals, 
but the court did not address it.  113 S.W.3d at 600; Tex. R. App. P. 47.1.  Because 
Kroger raised the issue to this Court in a supplemental brief, we have authority 
to consider it.  Tex. R. App. 
P. 53.4; Little v. Texas Dep’t of Criminal Justice, 148 S.W.3d 
374, 384 (Tex. 2004); N. Nat. Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 
609 (Tex. 1998).