DALLAS COUNTY, Appellant,

v.

Glen HOLMES, Appellee.

No. 05–00–01746–CV.

Court of Appeals of Texas,
Dallas.

Dec. 5, 2001.

Jana Marie Prigmore, District Attorney's Office–Civil Division, Dallas, for appellant.

Randal Craig Shaffer, Mateer & Schaffer, P.C., Dallas, for appellee.

Before Justices FITZGERALD,

FARRIS,[1] and ROSENBERG.[2]

## OPINION

BARBARA ROSENBERG, Justice (Assigned).

Glen Holmes sued Dallas County for damages, alleging wrongful termination in retaliation for filing a workers' compensation claim, see TEX. LAB.CODE ANN. §§ 451.001, 451.002(a) (Vernon 1996), and fraud. The jury found in favor of Holmes on the wrongful termination claim.[3] The trial court awarded him $100,000.[4] In three issues, Dallas County contends that (1) the evidence is legally and factually insufficient to support the jury's finding of wrongful termination, and (2) the trial court erred in refusing to submit Dallas County's requested instructions and questions. Concluding the evidence is sufficient to support the finding and there was no abuse of discretion in the submission of the jury charge, we affirm.

## FACTUAL BACKGROUND

Holmes began working at the Dallas County Juvenile Detention Center in 1983. In 1986 and 1991, Holmes was reprimanded for failing to obtain prior approval for absences. In January 1993, Holmes suffered a work-related injury and filed a workers' compensation claim. He was then working the 11:00 p.m. to 7:00 a.m. shift, Saturday through Wednesday, in a supervisory position. He missed work at the detention center; February 17, 1993, was the last day he worked. On March 30, 1993, Holmes was informed that his treating physician, Dr. Mason, had released him for work. He called his manager, Rick Morrison, but did not return to work. Although the record shows confusion regarding the release date, Holmes believed that he and Dr. Mason decided on April 2 that he would return to work on April 10, and Dr. Mason gave him a disability report dated April 2 releasing him to work. Holmes wrote on the disability report that he would return on April 10 and to use sick time, and slipped the report under Morrison's door. He called Morrison "nightly, at least three nights" before receiving a memorandum, dated April 8, terminating him effective April 2 for poor attendance, misuse of leave policy, and job abandonment.

Holmes appealed his termination, following Dallas County's grievance procedures. In November 1995, a panel of the juvenile board recommended Holmes's reinstatement. Holmes did not return to work because of a shift conflict. Subsequently, the juvenile board did not approve Holmes's reinstatement, making his termination final.[5]

## SUFFICIENCY OF THE EVIDENCE

In its first issue, Dallas County argues there is no evidence or insufficient evidence to support the jury's answer to Question 1, "Did Dallas County discharge Glen Holmes because he filed a worker's

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. The jury also found in favor of Dallas County on the fraud claim; however, there is no complaint on appeal regarding that finding.

4. The jury found Holmes was entitled to $185,300 in loss of past earnings and employee benefits. The trial court reduced this amount to $100,000 pursuant to the Texas Tort Claims Act, which Dallas County pleaded in its fourth amended original answer.

5. Dallas County's issues relate only to Holmes's termination following his failure to return to work after his 1993 injury.

compensation claim in good faith?" Specifically, Dallas County contends Holmes cannot show a causal connection between the discharge and filing a claim because Dallas County produced evidence of a legitimate nondiscriminatory reason for termination, job abandonment for failure to follow absence notification policies.

*Standard of Review and Applicable Law*

When an appellant challenges the legal sufficiency of the evidence on an issue on which he did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In reviewing a no evidence challenge, we consider only the evidence and inferences tending to support the adverse finding and disregard all contrary evidence and inferences. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

If a party is attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher,* 660 S.W.2d at 58. In addressing a factual sufficiency of the evidence challenge, this Court must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). This Court is not a fact finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Findings of fact are the exclusive province of the jury

or trial court. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744 (Tex.1986). Accordingly, if there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Beall v. Ditmore,* 867 S.W.2d 791, 795–96 (Tex.App.—El Paso 1993, writ denied). When there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Id.* at 796.

An employer is prohibited from discharging or otherwise discriminating against an employee because he in good faith filed a workers' compensation claim. TEX. LAB.CODE ANN. § 451.001. To prove a prima facie case under this antiretaliation statute, a plaintiff must establish that he, in good faith, filed a workers' compensation claim, and there exists a causal connection between the filing of the claim and the discharge or other act of discrimination. *Cazarez,* 937 S.W.2d at 450. In *Cazarez,* the supreme court established the standard of causation for this purpose: the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did. *Id.* Circumstantial evidence and the reasonable inferences from such evidence can prove the causal connection. *Id.* at 451 (citation omitted). Circumstantial evidence that may show this causal link includes: (1) knowledge of the compensation claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment of the injured employee in comparison to similarly situated employees; and (5) evidence that the stated reason for discharge was false. *Id.* Once the employee has established the link, it is the employer's burden to rebut the alleged discrimination by showing that there was a legitimate

reason behind the discharge. *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

### Discussion

█ Considering only the evidence and inferences tending to support the jury's adverse finding and disregarding all contrary evidence and inferences, first the record shows that it is undisputed that Dallas County was aware of Holmes's workers' compensation claim. Further, the record indicates that there was evidence that Dallas County failed to adhere to established policies and the reason for the discharge was false. In that regard, the record shows that the "Notification of Absence" provision in Dallas County's administrative policy manual states: "If, for any reason, an employee is unable to report for work, notification shall be made to the employee's immediate supervisor at the *earliest time possible.* Based on *prior or timely notification,* the department shall determine an employee's eligibility to receive paid leave." (Emphasis added.) In addition, the Juvenile Detention Center's Policy and Procedure Manual provides that staff shall be required to call in an absence at least one hour before the start of their assigned schedule and that staff working the 11:00 p.m. to 7:00 a.m. shift "shall call in an absence no later than 10:00 PM."

The record contains a letter dated April 10 from Holmes to Randy Wadley, assistant director of the juvenile department, in which Holmes stated that, on March 30, 1993, Debra Tanksley, a workers' compensation commission staff member, told Holmes that his treating physician, Dr. Mason, had released him for work. About 9:00 p.m. or 10:00 p.m. that night, Holmes called his manager, Morrison, and told him that Holmes had not yet seen his physician

and needed to talk to him before returning to work. He told Morrison that he would not be in on March 30. Morrison replied that he did not expect Holmes that night and to "take some time until you get things worked out." Holmes called Morrison again on March 31. However, he was unable to contact Morrison on Thursday, April 1; Holmes was not scheduled to work April 1 or Friday, April 2. On April 2, Holmes and Dr. Mason discussed his return date and decided that April 10 was his return date. Dr. Mason gave him a disability release dated April 2, 1993, which released him to regular job duties. Holmes took the disability release to the detention center to give it to Morrison, but Morrison had not yet arrived. Holmes spoke to another supervisor, Gibson, who was on duty at that time. Holmes wrote on the disability report: "Rick; will return to work on 4–10–93[.] Please use sick time." Holmes initialed the note and slid the disability report under Morrison's door.

Holmes's testimony at trial was that he went to the center on April 2 at about the time he expected Morrison to be there, which was usually between 9:00 p.m. and 11:00 p.m. After sliding the disability report under Morrison's door, Holmes called Morrison later that night "and told him what was going on." Morrison told him "to take care of your business, do what you got to do and we'll just look to hear from you." Holmes also testified that he spoke to Morrison "nightly, at least three nights prior to receiving [the April 8 termination memorandum]." A reasonable inference from the evidence is that Holmes's three additional calls occurred between the workdays of April 3 and April 7 (the last workday before April 8, the date of the termination memorandum), and that Holmes called about the same time each night, between 9:00 p.m. and 11:00 p.m., when he expected Morrison to be at the

center. Thus, the evidence and reasonable inferences show that Holmes followed the absence notification requirements, first, by calling his supervisor on March 30, the earliest time possible after being told by Tanksley that his doctor had released him to return to work and, second, by calling on the workdays of March 31 and at least three nights before receiving the termination memorandum. This constitutes some evidence that Holmes followed the absence notification policy as stated in Dallas County's and the center's manuals. Thus, this case is factually distinguishable from *Dallas Area Rapid Transit v. Johnson*, 50 S.W.3d 738, 740–41 (Tex.App.—Dallas 2001, no pet.) (when only evidence of causal connection between filing a workers' compensation claim and discharge is that employer terminated employee after placing reasonable restriction on reinstatement policy, and such evidence is as consistent with showing of employer's failure to follow its own reinstatement policy as with retaliation for filing a workers' compensation claim and nothing shows that one fact is more probable than another, then neither can be inferred, and the circumstantial evidence is legally no evidence).

Nevertheless, Dallas County argues that Holmes abandoned his job because he was released to return to work on April 2 and he was required, but failed, to call a supervisor each day to state he would be out because he was sick. Bill Burdett, the center's superintendent, and Wadley testified that the center had a policy that an employee without a doctor's excuse was required to call in each day he was out on sick leave and that failure to do so constituted job abandonment. Burdett relied on the "Notification of Absence" provision in Dallas County's administrative policy manual to support "job abandonment." However, Burdett's interpretation that the "prior or timely notification" of the ab-

sence means daily contact contradicts the plain language and is, therefore, not a reasonable interpretation. Further, Holmes believed Dr. Mason told him he was released as of April 10. Therefore, we reject Dallas County's argument that Holmes's claim fails as a matter of law because there was a legitimate nondiscriminatory reason, job abandonment, for Holmes's termination. We resolve Dallas County's legal sufficiency challenge in its first issue against it.

Considering all the evidence, there is evidence that Holmes was previously reprimanded for failure to notify his immediate supervisor of an absence and failure to obtain prior approval for absences. However, the previous reprimands involved not receiving prior approval before extending vacation and returning late from authorized sick leave, not daily contact after release to return to work, and these actions resulted in reprimands, not termination. Thus, the previous reprimands are not evidence of termination in this instance due to a uniform enforcement of a reasonable absentee policy. Further, there was evidence that Dr. Mason gave March 30, April 2, and April 10 as the release date. The jury resolves conflicts in the evidence. Because the finding on wrongful termination is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, we resolve Dallas County's factual sufficiency challenge in its first issue against it.

## FAILURE TO SUBMIT REQUESTED INSTRUCTIONS AND QUESTIONS

 In its second issue, Dallas County contends the trial court erred in refusing to submit its requested instructions. Specifically, Dallas County requested the trial court submit instructions on its defense of uniform enforcement of a reasonable ab-

sentee policy, its defense of business necessity, the "but for" causation standard, a reference to post-discharge acts by an employer to redress discriminatory conduct,[6] and the correct measure of damages that included mitigation. In its third issue, Dallas County contends the trial court erred by refusing to submit its requested questions. Specifically, Dallas County requested the trial court submit the following questions: whether Holmes was released to return to work on April 2, and whether Dallas County's action was based on a legitimate business reason and did not violate the antiretaliation statute.

A trial court must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence that will aid the jury in reaching a verdict. TEX.R. CIV. P. 278; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex.1999). As a general rule, when a statutory cause of action is submitted, the charge should "track the language of the provision as closely as possible." *Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 413 (Tex.2000). When feasible, jury questions should be in broad form, accompanied by appropriate instructions and definitions. TEX.R. CIV. P. 277; *Rodriguez*, 995 S.W.2d at 664. When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000) (op. on reh'g); *see* TEX.R. CIV. P. 277. The trial judge is accorded broad discretion so long as the charge is legally correct. *Rodriguez*, 995 S.W.2d at 664.

Question 1, "Did Dallas County discharge Glen Holmes because he filed a worker's compensation claim in good faith?" is taken from Texas Pattern Jury Charge 107.5, as is the instruction:

There may be more than one cause for an employment decision. An employer does not discharge an employee for filing a worker's compensation claim in good faith if the employer would have discharged the employee when he did even if the employee had not filed a worker's compensation claim in good faith.

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEX. PATTERN JURY CHARGES PJC 107.5 (2000). This charge closely tracks section 451.001 of the labor code. Question 3 was predicated on an affirmative answer to question one and asked what sum of money would compensate Holmes for damages resulting from Dallas County's conduct. It included instructions on mitigation and provided for amounts of past and future loss of earnings and employee benefits, as provided in the Pattern Jury Charges. *See id.* PJC 110.1, 110.28. Dallas County does not argue that the questions and instructions given were improper; rather, Dallas County argues that additional questions and instructions should have been submitted. However, Dallas County cites no authority supporting submission of its requested instructions. Further, the jury need not and should not be burdened with surplus instructions, even if they are proper statements of the law. *Acord v. Gen. Motors Corp.*, 669 S.W.2d 111, 114, 116 (Tex.1984). We conclude the questions and instructions submitted adequately advised the jury of the factual issues to be considered and

---

6. This requested instruction reads, "You are instructed that an employer need not fire others or create new positions to avoid liability for discharging an employee who has filed a workers' compensation claim as long as its actions are free of taint itemized in the retaliatory discharge statute."

Dallas County's requested instructions were merely repetitious. *See Linden–Ali-mak, Inc. v. McDonald,* 745 S.W.2d 82, 86 (Tex.App.—Fort Worth 1988, writ denied). Therefore, because Dallas County has not shown its requested instructions were reasonably necessary to enable the jury to render a proper verdict, Dallas County cannot show an abuse of discretion. We resolve Dallas County's second issue against it.

Moreover, because Dallas County's requested questions constitute inferential rebuttal questions, the trial court did not abuse its discretion in failing to submit them. *See* TEX.R. CIV. P. 277 (prohibiting inferential rebuttal questions in charge); *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex.1978) (inferential rebuttal question presents contrary or inconsistent theory from claim relied upon for recovery). Therefore, we resolve Dallas County's third issue against it.

### CONCLUSION

Having resolved Dallas County's three issues against it, we affirm the trial court's judgment.