v01009cp1




 








NUMBER 13-01-009-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


HAGGAR CLOTHING COMPANY

A/K/A HAGGAR APPAREL

COMPANY, Appellant,


v.



ALTAGRACIA HERNANDEZ, Appellee.

 




On appeal from the 92nd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Castillo, and Dorsey (1)


Opinion by Justice Yañez



 Appellant, Haggar Clothing Company a/k/a Haggar Apparel Company ("Haggar"),
appeals a jury verdict finding that it discharged appellee, Altagracia Hernandez, in
retaliation for filing a worker's compensation claim. See Tex. Lab. Code Ann. § 451.001
(Vernon 1996). In seven issues, Haggar challenges the legal and factual sufficiency of the
evidence supporting the jury's findings of: (1) retaliation; (2) actual malice; (3) punitive
damages in the amount of $1,400,000; and (4) actual damages. Haggar also contends:
(1) the award of punitive damages is grossly excessive in violation of the excessive fines
and due process clauses of the U.S. Constitution (issue four); (2) the trial court erred in
admitting certain "other incidents" evidence (issue six); and (3) the jury charge contained
errors which entitle Haggar to a new trial. We affirm the trial court's judgment. 

 The facts of this case are known by the parties, and we do not recite them here. 
Furthermore, because all issues are well-settled, we issue this memorandum opinion. See
Tex. R. App. P. 47.4

Standard of Review 


 When, as here, the party without the burden of proof challenges the legal sufficiency
of the evidence, we will sustain the challenge only if, considering the evidence and
inferences in the light most favorable to the finding, there is no more than a scintilla of
evidence supporting it. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995). If there is more than a scintilla of evidence to support the finding, then the no-evidence challenge fails. Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors,
Inc., 960 S.W.2d 41, 48 (Tex. 1998); Hines v. Comm'n for Lawyer Discipline, 28 S.W.3d
697, 701 (Tex. App.--Corpus Christi 2000, no pet.). If the evidence supplies some
reasonable basis for differing conclusions by reasonable minds as to the existence of a
vital fact, then there is some evidence. See Kindred v. Con/Chem, Inc. 650 S.W.2d 61,
63 (Tex. 1983); Hines, 28 S.W.2d at 701. 

 When reviewing a no-evidence point, we consider only the evidence supporting the
finding and disregard all evidence to the contrary. State Farm Fire & Cas. Co. v. Simmons,
963 S.W.2d 42, 44 (Tex. 1998); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450
(Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more
than create a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence. See Kindred, 650 S.W.2d at 63; Hines, 28
S.W.2d at 701. 

 In reviewing factual sufficiency issues challenging a jury verdict, we consider and
weigh all of the evidence, not just the evidence that supports the verdict. Krishnan v.
Ramirez, 42 S.W.3d 205, 211 (Tex. App.-Corpus Christi 2001, pet. denied) (citing Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1985) (per curiam)). We set aside the verdict only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Krishnan, 42 S.W.3d at 212. 
The jury, as fact finder, is the judge of the credibility of witnesses and weight to be
accorded their testimony. Krishnan, 42 S.W.3d at 212. Because the appellate court is not
the fact finder, it may not substitute its own judgment for that of the trier of fact, even if a
different answer could be reached on the evidence. Id. The amount of evidence
necessary to affirm a judgment is far less than that which is necessary to reverse a
judgment. Id. It is particularly within the province of the jury to resolve matters which are
necessarily speculative and not subject to precise mathematical calculations, such as
physical pain and mental anguish. Greenpoint Credit Corp. v. Perez, 75 S.W.3d 40, 45
(Tex. App.-San Antonio 2002, pet. granted, judgm't vacated w.r.m.); White v. Sullins, 917
S.W.2d 158, 162(Tex. App.-Beaumont 1996, writ denied); Pipgras v. Hart, 832 S.W.2d
360, 365-66 (Tex. App.-Fort Worth 1992, writ denied). When there is conflicting evidence,
the jury's verdict is generally regarded as conclusive. Dallas County v. Holmes, 62 S.W.3d
326, 329 (Tex. App.-Dallas 2001, no pet.). 

 When both legal and factual sufficiency issues are raised, we are required to rule
on the legal insufficiency issue first. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400,
401 (Tex.1981). If we find some evidence to support the verdict, we will then review the
claim of factually insufficient evidence. Texas Indus., Inc. v. Vaughan, 919 S.W.2d 798,
801 (Tex. App.-Houston [14th Dist.] 1998, writ denied). 

Applicable Law


 Section 451.001 of the labor code provides, in pertinent part: 

A person may not discharge or in any other manner discriminate against an
employee because the employee has: 

 
(1) filed a workers' compensation claim in good faith;

Tex. Labor Code Ann. § 451.001 (Vernon 1996). 

 An employee has the burden of demonstrating a causal link between the discharge
and the filing of a workers' compensation claim. Garcia v. Allen, 28 S.W.3d 587, 600 (Tex.
App.-Corpus Christi 2000, pet. denied). In order to recover for retaliatory discharge, an
employee must prove that but for the filing of a workers' compensation claim, the discharge
would not have occurred when it did. City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex.
2000); (2)
 Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). An
employee need not show he was fired solely because he filed a workers' compensation
claim; however, he must establish that "but for" the filing of the claim, the discharge would
not have occurred when it did. Cazarez, 937 S.W.2d at 450. This causal connection is an
element of the employee's prima facie case and may be established by direct or
circumstantial evidence. Allen, 28 S.W.3d at 600. Circumstantial evidence sufficient to
establish a causal link between termination and filing a compensation claim includes: (1)
knowledge of the compensation claim by those making the decision on termination; (2)
expression of a negative attitude toward the employee's injured condition; (3) failure to
adhere to established company policy; (4) discriminatory treatment in comparison to
similarly situated employees; and (5) evidence that the stated reason for the discharge was
false. Id.; see Casarez, 937 S.W.2d at 451.

Legal and Factual Sufficiency


 In its first issue, Haggar contends there is no evidence or insufficient evidence that
it terminated Hernandez in retaliation for filing a worker's compensation claim. Haggar
argues Hernandez was terminated pursuant to a non-discriminatory and uniformly enforced
absence-control policy. 

 Uniform enforcement of a reasonable absence-control provision does not constitute 
retaliatory discharge. Casarez, 937 S.W.2d at 451. An employer who terminates an
employee for violating such a rule cannot be liable for retaliatory discharge so long as the
rule is uniformly enforced. Id. 

 We have reviewed the entire sixteen-volume reporter's record in this case. Having
conducted a thorough review of the evidence and considering our standard of review, we
conclude there is legally and factually sufficient evidence to support the jury's finding of
retaliation. (3) We overrule Haggar's first issue.

Malice


 In its second and third issues, Haggar challenges the legal and factual sufficiency
of the evidence supporting the jury's finding of malice and the jury's assessment of punitive
damages in the amount of $1,400,000. In its fourth issue, Haggar contends the punitive
damage award is grossly excessive. 

 In order to recover exemplary damages in a workers' compensation retaliation case,
a party must prove the employer acted with actual malice, which requires proof of ill will,
spite, evil motive, or a specific intent to cause injury to the employee. Zimlich, 29 S.W.3d
at 71 (citing Cazarez, 937 S.W.2d at 454) (emphasis added). The jury found that Haggar
acted with malice in discharging Hernandez and awarded her $1,400,000 in punitive
damages. 

 Haggar argues that because Hernandez's claim is restricted to retaliatory discharge,
the malice inquiry is similarly restricted, as a matter of law, to the discharge and the state
of mind of the person who made the termination decision. In support of its argument,
Haggar cites Zimlich, 29 S.W.3d at 70-71. 

 We find the facts in Zimlich distinguishable. In Zimlich, the plaintiff claimed he was
discriminated against in violation of the Texas Whistleblower Act (4) because he reported a
violation of law to the appropriate authorities. Id. at 67-68. Zimlich identified three specific
adverse employment decisions as evidence of the discrimination. Id. at 68. Zimlich argued
that evidence of the discriminatory motives of two other employees should be considered,
even though he had not alleged any involvement by those employees in the alleged
adverse employment decisions. Id. at 68-70. The Texas Supreme Court declined to
consider whether liability for discrimination can be based on a "conduit theory," in which
one supervisor makes a recommendation regarding an employee to another innocent
supervisor, who acts on that recommendation without exercising any independent
judgment. Id. at 70. The Zimlich court noted that it was unnecessary to consider such a
"conduit" theory because there was no evidence that the decision-maker identified by
Zimlich was the conduit for the bad motives of the two employees. Id. at 70-71. We have
found no Texas case applying Zimlich in the restrictive manner that Haggar urges us to
adopt here. Accordingly, we decline to do so. 

 After thoroughly reviewing the evidence, we hold the evidence is legally and
factually sufficient to support the jury's finding of actual malice. See Whole Foods Mkt.
Southwest L.P. v. Tijerina, 979 S.W.2d 768, 780 (Tex. App.-Houston [14th Dist.] 1998, pet.
denied) (economic incentive, combined with badgering of employee and testimony that
money was a factor in terminating employee sufficient to establish malice by employer);
Lubbock Cty. v. Strube, 953 S.W.2d 847, 858-60 (Tex. App.-Austin 1997, writ denied)
(evidence that supervisors ignored employee's injuries, gave her work assignments which
subjected her to harassment, and threatened to fire her were sufficient to support finding
of malice). We overrule Haggar's second issue. 

Punitive Damages


 In its fourth issue, Haggar argues the punitive damage award of $1,400,000 is
grossly excessive and in violation of the excessive fines and due process clauses of the
U.S. Constitution. It also contends, in its third issue, that the damage award was not
supported by legally or factually sufficient evidence. 

 Where, as here, the constitutionality of a punitive damage award is challenged on
the ground that the amount of punitive damages is excessive under the standards set forth
in BMW of N. Am. v. Gore, 517 U.S. 559 (1996), appellate courts must conduct a de novo
review of the trial court's application of the Gore standards to the jury's award. State Farm
Mut. Auto. Ins. Co. v. Campbell, 123 S.Ct. 1513, 1520 (2003) (citing Cooper Indus., Inc.
v. Leatherman Tool Group, Inc., 532 U.S. 424, 431 (2001)). To determine whether a
punitive damage award is unconstitutionally excessive, the Texas Supreme Court has
adopted the guidelines set forth by the United States Supreme Court in Gore, including:
(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between
actual and punitive damages; and (3) a comparison of the punitive damages awarded and
other civil or criminal penalties that could be imposed for similar misconduct. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 45 (Tex. 1998). Under Gore, even if
an assessment of punitive damages is not deemed excessive under governing state law,
it may violate a party's substantive due process right to protection from "grossly excessive"
punitive damages awards. See id. A claim that a punitive damage award is grossly
excessive to the extent that it violates a party's substantive due process rights involves a
question of law, not a factual sufficiency review of the evidence. See id. 

 As noted, Haggar also challenges the legal and factual sufficiency of the evidence
supporting the award of punitive damages. Texas appellate courts review exemplary
damages awards to ensure that they are reasonable in their amount and rational in light
of their purpose to punish malicious conduct and deter its repetition. Strube, 953 S.W.2d
at 847 (citing City of San Antonio v. Heim, 932 S.W.2d 287, 294 (Tex. App.-Austin 1996,
no writ)). We may reverse an exemplary damages award or suggest a remittitur only if we
determine that the evidence supporting the award is so factually insufficient or the verdict
is so against the great weight and preponderance of the evidence as to be manifestly
unjust. Id. In our assessment, we consider the following factors: (1) the nature of the
wrong; (2) the character of the conduct involved; (3) the degree of culpability of the
wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent
to which such conduct offends a public sense of justice and propriety. Id. (citing Alamo
Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981)). When reviewing an exemplary
damages verdict for excessiveness, we must detail the relevant evidence and explain why,
in light of the Kraus factors, the evidence either supports or does not support the
exemplary damages award. Id.; see Ellis County State Bank v. Keever, 915 S.W.2d 478,
479 (Tex. 1995); see also Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex.
1994).

 Here, the jury was properly instructed on the Kraus factors. See Kraus, 616 S.W.2d
at 910. Thus, we review the relevant evidence, in light of the Kraus factors and the three
guidelines required by Gore. See Apache Corp. v. Moore, 960 S.W.2d 746, 749 (Tex.
App.-Amarillo 1997, pet. denied) (noting first four Kraus factors are addressed by first
Gore guideline and deeming Kraus factors to be continuing considerations within
framework of Gore guidelines). 

Reprehensibility

 In Campbell, the United States Supreme Court recently noted:

"The most important indicium of the reasonableness of a punitive damages
award is the degree of reprehensibility of the defendant's conduct." Gore,
supra, at 575. We have instructed courts to determine the reprehensibility
of a defendant by considering whether: the harm caused was physical as
opposed to economic; the tortious conduct evinced an indifference to or a
reckless disregard of the health or safety of others; the target of the conduct
had financial vulnerability; the conduct involved repeated actions or was an
isolated incident; and the harm was the result of intentional malice, trickery,
or deceit, or mere accident. 517 U.S., at 576-577. The existence of any one
of these factors weighing in favor of a plaintiff may not be sufficient to sustain
a punitive damages award; and the absence of all of them renders any
award suspect. It should be presumed a plaintiff has been made whole for
his injuries by compensatory damages, so punitive damages should only be
awarded if the defendant's culpability, after having paid compensatory
damages, is so reprehensible as to warrant the imposition of further
sanctions to achieve punishment or deterrence. Id., at 575.


Campbell, 123 S.Ct. at 1521.

 

 Hernandez testified that she suffered a serious injury when she was struck by a
large table carried by a co-worker. She testified that although she was unable to walk and
wanted to go home, her supervisor, Dora Lozano, told her to remain at work and try and
"put up with [the pain]" because reporting a lost-time accident would disqualify the co-workers in Hernandez's unit from receiving a cash bonus based on Haggar's safety
incentive program. According to Hernandez, her co-workers told her to go see a doctor,
but her supervisor told her to wait and see whether her condition improved the next day. 
After returning to work the following day, she left work to seek treatment from a
chiropractor. When Lozano and Angel Ritchey, the plant manager, learned of her visit to
the chiropractor, they were angry and upset and told Hernandez that Haggar would not pay
for the treatment. Hernandez testified that she did not see a doctor right away because
"they would not give me the opportunity to go." 

 Lozano denied that she would have told Hernandez to postpone seeking treatment
for the purpose of ensuring the workers' receipt of the safety bonus. Lozano also testified
that Haggar employees could seek treatment from a chiropractor if they wished and that
Haggar did not require its employees to see a "company doctor." 

 Ritchey testified that she did not remember Hernandez's injury, but denied telling
Hernandez that Haggar would not pay for chiropractic treatment. Ritchey testified that
although she did not recall the events, the records reflect that she fired Hernandez
because of Hernandez's failure to return to work from a leave of absence.

 Dr. Roger Heredia, Hernandez's family doctor who began treating her work-related 
injury several weeks after it occurred, testified that her medical records show Hernandez
said she lost consciousness when hit by the table. He testified that a person who loses
consciousness should receive immediate medical attention. Dr. Heredia testified regarding
Haggar's practice of having a "company nurse" present during medical exams of
employees seeking treatment for work-related injuries. Dr. Heredia testified as follows:

Q [Hernandez's counsel]: Did the company nurse ever stop you to-- was
there ever a time when you had decided on a course of treatment for a
person and the company nurse jumped in and decided, well, maybe that's
not the course of treatment that we would like for you to have, Doctor?


A [Heredia]: Yes, sir.


Q: How often did that happen?


A: I couldn't count. Maybe about three or four.


Q: And what- describe that to us.


A: Well, it was like, for example, if a patient were injured and I thought that
the patient might need a day or two off, they would say- or the nurse would
say, Well, we'll send them back to the plant and we'll have them sitting down,
even laying down in the room. And we just want to have them there.


Q: Did he tell you why they just wanted to have him there?


A: No.


Q: Was your recommendation that the person should stay at home?


A: Yes. But I said, Well, okay, I guess we can try that.


Dr. Heredia testified that he complained to Haggar about the practice of the company
nurse's interference with his treatment of patients. Haggar responded by showing the
doctor and his partners the room at the plant with a bed where injured employees could
lie down. Dr. Heredia testified that if Hernandez had received proper treatment earlier and
had been given time to recover, she may have been able to return to work. He further
testified that in his view, Haggar's treatment of Hernandez was "a bit unfair." 

 Alma Palomares, a line supervisor who worked at the Haggar plant for fifteen years,
including the time that Hernandez was also employed there, testified that during her
employment at Haggar, she saw injured workers being mistreated. She testified that
production at the plant consisted of assembly-line "units," and that injured workers were
being re-injured because they were put back to work when they were physically unable to
meet the demands made by the company. She testified that such re-injuries were common
knowledge among supervisory personnel. On cross-examination, Palomares admitted she
was fired for "over counting," which Haggar considered "like stealing." 

 Joaquin Pimentel, who served as Haggar's occupational nurse during and following
Hernandez's leave of absence, testified by deposition that if employees lost time due to an
injury, "it pissed off the managers." According to Pimentel, many of the Haggar managers
told him that each lost-time accident resulted in a $30,000 loss to the plant's budget. 
Pimentel testified that if an employee was on medical leave due to an injury, Haggar "really
[didn't] want" the employee back. Pimentel testified, however, that although the lost-time
program created "pressure" to return employees to work, a doctor always made the final
decision regarding an employee's restrictions or ability to return to work. 

 Mary Jane Ballew Patrick, the Haggar nurse on duty the day Hernandez was injured,
testified that she saw Hernandez a short time after the injury, and that Hernandez stayed
at the nurse's station until the end of the day. She testified that because she does not
speak Spanish, she communicated with Hernandez through Dora Lozano. Patrick denied
that she ever saw anyone at Haggar get upset because of a lost-time accident. 

 We find that the evidence establishes that the harm caused to Hernandez was
physical; that Haggar's conduct evinced an indifference or reckless disregard for
Hernandez's health and safety; that she was financially vulnerable; and that the conduct
was not an isolated incident, but part of a pattern of conduct involving similarly situated
employees. See Campbell, 123 S.Ct. at 1521. We hold that the reprehensibility of
Haggar's conduct supports the punitive damages award. 

Ratio

 The second factor that must be examined is the ratio of compensatory to punitive
damages. Although the U.S. Supreme Court recently "decline[d] again to impose a bright-line ratio which a punitive damages award cannot exceed," it noted that "few awards
exceeding a single-digit ratio" will satisfy due process. Id. at 1524. Here, the jury awarded
Hernandez $210,000.00 in total compensatory damages, and $1,400,000.00 in punitive
damages, yielding a ratio of punitive to compensatory damages of approximately 6.66. We
conclude that the ratio between compensatory and punitive damages in this case is within
constitutional limits. See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462
(1993) (indicating that a 10 to 1 ratio would not be unconstitutional); see also Baribeau v.
Gustafson, No. 04-01-00732-CV, 2003 Tex. App. LEXIS 2106, at *23-*24 (Tex. App.-San
Antonio March 12, 2003, no pet. h.)(designated for publication) (finding $200,000 punitive
damage award proportional to $500 in compensatory damages where reducing amount of
punitive damages would not punish or deter egregious conduct).

Sanctions for Comparable Misconduct

 The third factor requires a comparison of the punitive damages to other civil or
criminal penalties that could be imposed for comparable misconduct. Judicial decisions
at the time of the misconduct are relevant under Gore's third prong to ascertain whether
a defendant had notice that its misconduct could subject it to a large punitive damages
award. Malone, 972 S.W.2d at 47. Thus, the question is whether Haggar had reasonable
notice that its conduct could result in substantial punishment in the form of punitive
damages. See id.; see also N. Am. Refractory Co. v. Easter, 988 S.W.2d 904, 920 (Tex.
App.-Corpus Christi 1999, pet. denied) (question under third standard is whether
defendant had reasonable notice that its conduct could result in punitive damages). 
Section 451.002 permits an employee to recover "reasonable damages" incurred as a
result of the violation of section 451.001, and that term has been interpreted to include
punitive damages. See Tex. Labor Code Ann. § 451.002 (1996); see also Whole Foods,
979 S.W.2d at 781 (citing Azar Nut Co. v. Caille, 734 S.W.2d 667, 669 (Tex. 1987)). We
hold that Haggar had notice that its misconduct could subject it to a large punitive damages
award. See Malone, 972 S.W.2d at 47.

 Haggar cites Campbell, 123 S.Ct at 1523, in support of its argument that the trial
court impermissibly allowed the jury to consider evidence involving other Haggar
employees in the award of punitive damages. Haggar argues that in Campbell, the U.S.
Supreme Court held the consideration of such "other acts" evidence in the calculation of
punitive damages to be a violation of due process. See id. 

 In Campbell, the Supreme Court held that a punitive damages award of $145
million, where full compensatory damages were $ 1 million, was excessive and violated the
due process clause of the Fourteenth Amendment. Id. at 1526. Campbell involved
whether evidence of State Farm's national scheme to meet corporate fiscal goals by
capping claim payments and engaging in fraudulent practices was properly admitted for
purposes of calculating punitive damages in a suit against the insurer for bad faith, fraud,
and intentional infliction of emotional distress. Id. at 1518-19. The Supreme Court found
that the Utah courts erred in awarding punitive damages on evidence of lawful out-of-state
conduct that bore no relation or was dissimilar to the conduct that harmed the plaintiffs. 
Id. at 1523-24. The Court noted that the Campbells had identified "scant evidence of
repeated misconduct of the sort that injured them." Id. at 1523 (emphasis added). The
Court expressly stated, however, that "evidence of other acts need not be identical to have
relevance in the calculation of punitive damages." Id. Thus, evidence of similar conduct
or conduct having a nexus to the specific harm suffered by the plaintiff may still be
admitted and considered in assessing punitive damages. See id. 

 Here, the evidence Haggar complains of involved testimony regarding its practices
and treatment of injured employees at its Weslaco plant over a period of time including the
time Hernandez was employed there. We hold that the "other acts" evidence admitted was
relevant to the calculation of punitive damages and that the trial court did not err in
admitting it. See id. at 1523-24; see also Gore, 517 U.S. at 577 (repeated misconduct is
is more reprehensible than an individual instance of malfeasance). 

 Having applied the three guidelines established in Gore, we hold that the punitive
damages award did not violate Haggar's due process rights. See Campbell, 123 S.Ct. at 
1523-26; Gore, 517 U.S. at 575-86; Malone, 972 S.W.2d at 45-48.

Sufficiency of Evidence Supporting Punitive Damages

 We turn next to a review of the relevant evidence in light of the Kraus factors. See

Kraus, 616 S.W.2d at 910. The evidence detailed above under the first Gore standard,
which we have determined satisfies the reprehensibility requirement, also satisfies the first
four Kraus factors. See Moore, 960 S.W.2d at 749 (first four Kraus factors addressed by
first standard under Gore). After reviewing all the relevant evidence, we conclude that the
jury could have found that Haggar's conduct offends the public's sense of justice and
propriety. See Kraus, 616 S.W.2d at 910. First, Hernandez testified her supervisor told
her to "put up with [the pain]" so that the unit's employees could avoid forfeiting a cash
incentive bonus. Second, Dr. Heredia testified he complained to Haggar about the
company nurse's interference with the treatment of patients. Third, Palomares testified
that she saw injured workers being mistreated and reinjured, and that such reinjuries were
common knowledge among Haggar supervisors. Finally, Pimentel testified that managers
expressed their displeasure with lost-time injuries because of the adverse effect on the
plant's revenues. With regard to the last Kraus factor, the net worth of the defendant, the
jury heard evidence that Haggar's equity and/or net worth was $69,154,241 as of
September 1999. See Malone, 972 S.W2d at 40 (a defendant's ability to pay bears directly
on the question of adequate punishment and deterrence). 

 We hold that factually sufficient evidence supports the jury's award of punitive
damages. See Easter, 988 S.W.2d at 920 (applying Kraus factors to find evidence
factually sufficient to support punitive damage award). Evidence which is factually
sufficient is also necessarily legally sufficient. See British Am. Ins. Co. v. Howerton, 877
S.W.2d 347, 352 (Tex. App.-Houston [1st Dist.] 1994, writ dism'd by agr.). The punitive
damage award therefore survives both the legal and factual sufficiency challenges. We
overrule Haggar's third and fourth issues. 

Sufficiency of the Evidence to Support Damages


 In its fifth issue, Haggar challenges the legal and factual sufficiency of the evidence
supporting the jury's award of $70,000 for past economic damages and $140,000 for past
and future non-pecuniary compensatory damages. 

Past Lost Wages

 The jury awarded Hernandez $70,000 for wages and benefits between her
termination and the time the Haggar plant closed. Haggar contends there is no evidence
or insufficient evidence to support the award for lost wages because Hernandez at all
material times considered herself able to perform only light duty work. 

 If an employee proves retaliatory discharge, then the employee is entitled to recover
lost wages, the measure of which is the amount the employee would have earned had the
employee not been discharged in violation of the statute, less the sum he or she did earn
after termination. See Tex. Lab. Code Ann. § 451.002(a) (Vernon 1996 ); Metal Indus., Inc.
v. Farley, 33 S.W.3d 83, 88 (Tex. App.-Texarkana 2000, no pet.). Hernandez presented
evidence showing her hourly wage and the number of hours she worked per week. We
find the evidence legally and factually sufficient to support the jury's award of $70,000 in
lost wages. 

Compensatory Damages

 Haggar also challenges the legal and factual sufficiency of the evidence supporting
the jury's findings that Hernandez suffered $70,000 in past compensatory damages and
$70,000 in future compensatory damages, both of which "may include emotional pain and
suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary
losses." (5) 

 To support an award of mental anguish damages, a plaintiff must either present
"direct evidence of the nature, duration, and severity of their mental anguish, thus
establishing a substantial disruption in the plaintiff's daily routine," or "evidence of 'a high
degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation,
embarrassment, or anger.'" Latham v. Castillo, 972 S.W.2d 66, 70 (Tex. 1998) (citing
Parkway v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)); Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996); Norwest Mortgage, Inc. v. Salinas, 999
S.W.2d 846, 862 (Tex. App.-Corpus Christi 1999, pet. denied). Mental anguish is defined
as a high degree of mental suffering, beyond disappointment, anger, resentment, or
embarrassment, although it may include all of these. Phar-Mor, Inc. v. Chavira, 853
S.W.2d 710, 712 (Tex. App.-Houston [1st Dist.] 1993, writ denied). The proof must show
such painful emotions as grief, severe disappointment, indignation, wounded pride, shame,
despair, or public humiliation or a combination of any of these. Wal-Mart Stores, Inc. v.
Odem, 929 S.W.2d 513, 528 (Tex. App.-San Antonio 1996, writ denied). The "generally
nebulous issues of pain and suffering and loss of society" are "necessarily speculative, and
it is peculiarly within the province of the jury to resolve these matters and set the amount
of such damages." Spohn Hosp. v. Mayer, 72 S.W.3d 52, 67 (Tex. App.-Corpus Christi
2001), rev'd on other grounds, 104 S.W.3d 878 (Tex. 2003); Greenpoint, 77 S.W.3d at 45. 
Jurors are best suited to determine whether, and to what extent, a defendant's conduct
caused compensable mental anguish by referring to their own experience. Star Houston,
Inc. v. Shevack, 886 S.W.2d 414, 418-19 (Tex. App.-Houston [1st Dist.] 1994, writ denied).
Evidence of a loss of enjoyment of life may be considered in determining damages in
general or for pain and suffering. Spohn, 72 S.W.3d at 67. There must also be evidence
that the amount of mental anguish damages awarded is fair and reasonable, and the
appellate court must perform a "meaningful evidentiary review" of the amount found. 
Saenz, 925 S.W.2d at 614. 

 Having conducted a thorough review of the evidence, we conclude there is legally
and factually sufficient evidence to support the jury's verdict. See Haggar Apparel Co. v.
Leal, 100 S.W.3d 303, 314 (Tex. App.-Corpus Christi 2002, pet. filed) (evidence of
humiliation, depression, anger, and insomnia sufficient to support finding of mental
anguish); C & D Robotics, Inc. v. Mann, 47 S.W.3d 194, 200-01 (Tex. App.-Texarkana
2001, no pet.) (finding evidence legally and factually sufficient to support damages for
emotional pain, mental anguish, and inconvenience where plaintiff felt "devastated,"
"depressed," and "humiliated"); Metal Indus., Inc. of California v. Farley, 33 S.W.3d 83, 89-90 (Tex. App.-Texarkana 2000, no pet.) (finding evidence legally and factually sufficient 
where plaintiff experienced loss of self-esteem, anger, devastation, betrayal,
disappointment, and loss of sleep); Tex. Animal Health Comm'n v. Garza, 27 S.W.3d 54, 
63 (Tex. App.-San Antonio 2000, pet. denied) (upholding mental anguish damages where
plaintiff presented testimony that he was depressed, irritable, and experienced
sleeplessness and hives); Wyler Indus. Works, Inc. v. Garcia, 999 S.W.2d 494, 509 (Tex.
App.-El Paso 1999, no pet.) (upholding mental anguish damages where plaintiff testified
to humiliation, marital discord, loss of self-esteem, and sleeping difficulties); Goodman v.
Page, 984 S.W.2d 299, 306 (Tex. App.-Fort Worth 1998, pet. denied) (upholding mental
anguish damages where plaintiff testified to feelings of devastation and humiliation and
experienced stomach problems); Burlington Coat Factory Warehouse of El Paso, Inc. v.
Flores, 951 S.W.2d 542, 548 (Tex. App.-El Paso 1997, no writ) (upholding mental anguish
damages where plaintiff experienced "despair" and marital discord); Am. W. Airlines, Inc.
v. Tope, 935 S.W.2d 908, 916 (Tex. App.-El Paso 1996, no writ) (upholding damages for
mental anguish where plaintiff was scared to death, devastated, frustrated, very angry, and
in therapy). 

 We next consider whether the $140,000 in past and future compensatory damages
awarded by the jury was fair and reasonable. See Saenz, 925 S.W.2d at 614. "Emotional
pain, mental anguish, and inconvenience are difficult to quantify in monetary terms." C&D
Robotics, 47 S.W.3d at 201. "The jury has broad discretion to assign a specific dollar
amount to compensate a person for these kinds of damages." Id. We conclude that the
jury's award of $140,000 in past and future compensatory damages was supported by the
evidence, was fair and reasonable, and not so contrary to the overwhelming weight of the
evidence as to be clearly wrong or unjust. Accordingly, we overrule Haggar's fifth issue. 
"Other Incidents" Evidence 


 In its sixth issue, Haggar contends the trial court erred in admitting testimony by
former Haggar employees regarding the company's alleged "pattern and practice" of
discrimination against other employees who had suffered work-related injuries. Haggar
contends that such "other incidents" evidence was inadmissible to show Haggar's
discriminatory intent because it involved different supervisors, different circumstances, and
in some instances, was not proximate in time to Hernandez's termination. Haggar also
cites Zimlich, 29 S.W.3d at 70-71, in support of its argument that any evidence of 
retaliatory motive by a decision-maker other than the person who actually terminated
Hernandez is irrelevant to the inquiry, and was therefore improperly admitted.

 The admission and exclusion of evidence are committed to the trial court's sound
discretion. Norwest, 999 S.W.2d at 861 (citing City of Brownsville v. Alvarado, 897 S.W.2d
750, 753 (Tex. 1995)). A person seeking to reverse a judgment based on evidentiary error
need not prove that but for the error a different judgment would necessarily have been
rendered, but only that the error probably resulted in an improper judgment. Alvarado, 897
S.W.2d at 754; McCraw v. Maris, 828 S.W.2d 756, 758 (Tex. 1992); Norwest, 999 S.W.2d
at 861. A successful challenge to evidentiary rulings usually requires the complaining party
to show that the judgment turns on the particular evidence excluded or admitted. Alvarado,
897 S.W.2d at 754; Norwest, 999 S.W.2d at 861. We conduct our review to determine
whether the error was reversible by examining the entire record, focusing on how the
erroneously admitted or excluded evidence would have influenced the trier of fact. Gorges
Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 677 (Tex. App.-Corpus Christi 1997, no
pet.) (citing Alvarado, 897 S.W.2d at 755). 

 A trial court abuses its discretion when it acts without regard for any guiding rules
or principles. Alvarado, 897 S.W.2d at 754. An appellate court must uphold the trial
court's evidentiary ruling if there is any legitimate basis for the ruling. State Bar of Tex. v.
Evans, 774 S.W.2d 656, 658 (Tex.1989); Norwest, 999 S.W.2d at 861. 

 An exception to the general rule prohibiting evidence of "other acts" applies if the
acts or transactions are so connected to the transaction at issue that they may all be parts
of a system, scheme, or plan. See Johnson v. City of Houston, 928 S.W.2d 251, 253 (Tex.
App.-Houston [14th Dist.] 1996, no writ) (citing Durbin v. Dal-Briar Corp., 871 S.W.2d 263,
268-69 (Tex. App.-El Paso 1994, writ denied), overruled, in part, on other grounds by
Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362 (Tex. 2000)). In Durbin, the El
Paso Court of Appeals held that the trial court abused its discretion by excluding evidence
of other retaliatory acts by a corporation in a workers' compensation wrongful discharge
case where the evidence sought to be introduced involved the same supervisory
personnel, the same workplace, and the same pattern of conduct that motivated the
plaintiff's discharge. See Durbin, 871 S.W.2d at 269. 

 Moreover, the rules of evidence allow the admission of evidence of the habit of a
person, or of the routine practice of an organization, if the evidence is relevant to prove that
the conduct of the person or organization on a particular occasion was in conformity with
the habit or routine practice. See Tex. R. Evid. 406; see also Durbin, 871 S.W.2d at 268.

For testimony of the routine practice of an organization to be admissible, it must show a
regular response to a repeated specific situation. Pacesetter Corp. v. Barrickman, 885
S.W.2d 256, 263 (Tex. App.-Tyler 1994, no writ); Mediacomp, Inc. v. Capital Cities
Communication, 698 S.W.2d 207, 212 (Tex. App.-Houston [1st Dist.] 1985, no writ)
(stating that evidence of the routine practice of an organization is relevant to prove that the
conduct of the organization on a particular occasion was in conformity with the routine
practice). 

 Here, Haggar complains of the admission of testimony by several former Haggar
employees. We conclude that as in Durbin, the testimony involves the same workplace
and the same pattern of conduct alleged in the present case. See Durbin, 871 S.W.2d at
269. With the exception of one challenged witness, who worked as a nurse at the plant
during and after Hernandez's leave of absence, the remaining witnesses worked at the
same plant where Hernandez was employed during the same period of time. We find that
the witnesses' testimony involved incidents and events that were substantially similar to the
events at issue in the present case. We hold that the trial court did not abuse its discretion 
in admitting the evidence. Haggar's sixth issue is overruled. 

Charge Error 


 In its seventh and final issue, Haggar challenges various aspects of the jury charge,
which it contends entitle it to a new trial. Specifically, Haggar contends the trial court erred
in: (1) including an instruction that "evidence that other employees were discharged by
Haggar Clothing Company should be considered for the question of the intent of the
defendant corporation and for the assessment of exemplary damages if any;" (2) refusing
to submit an instruction that the jury should disregard testimony and evidence involving
former employees concerning conduct which occurred after Hernandez's termination; (3)
refusing to submit an instruction on Haggar's defense of uniform enforcement of a
reasonable absence control policy; (4) failing to identify the person(s) whose conduct as
Haggar's agent could subject it to punitive damages; (5) instructing the jury to award
compensatory damages for "other non-pecuniary losses" without defining what other types
of non-pecuniary damages may be awarded; and (6) refusing to submit an instruction
including a "clear and convincing" standard of proof. 

 A trial court must submit in its charge to the jury all questions, instructions, and
definitions raised by the pleadings and evidence that will aid the jury in reaching a verdict.
Tex. R. Civ. P. 278; Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 663-64 (Tex. 1999). 
As a general rule, when a statutory cause of action is submitted, the charge should "track
the language of the provision as closely as possible." Borneman v. Steak & Ale of Tex.,
Inc., 22 S.W.3d 411, 413 (Tex. 2000). When feasible, jury questions should be in broad
form, accompanied by appropriate instructions and definitions. Tex. R. Civ. P. 277;
Rodriguez, 995 S.W.2d at 664. When a trial court refuses to submit a requested
instruction, the question on appeal is whether the request was reasonably necessary to
enable the jury to render a proper verdict. Tex. Workers' Comp. Ins. Fund v. Mandlbauer,
34 S.W.3d 909, 912 (Tex. 2000) (op. on reh'g); see Tex. R. Civ. P. 277. The trial judge is
accorded broad discretion so long as the charge is legally correct. Rodriguez, 995 S.W.2d
at 664.

 Upon the general principle that a proper jury instruction is one that assists the jury
and is legally correct, a trial court may personalize or individualize a charge to the facts of
the case so the jury can more easily understand the law. U.S. Sporting Products, Inc. v.
Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 220 (Tex. App.-Waco 1993, writ
denied). Trial courts also are given considerably more discretion in submitting instructions
and definitions than in submitting questions. Harris v. Harris, 765 S.W.2d 798, 801 (Tex.
App.-Houston [14th Dist.] 1989, writ denied); Houston Nat'l Bank v. Biber, 613 S.W.2d
771, 776 (Tex. Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.); see also Ishin Speed
Sport, Inc. v. Rutherford, 933 S.W.2d 343, 349-350 (Tex. App.-Fort Worth 1996, no writ). 
An explanatory instruction is improper only if it is a misstatement of the law as applicable
to the facts. See DeLeon v. Pickens, 933 S.W.2d 286, 292 (Tex. App.-Corpus Christi
1996, writ denied). 

 In its first sub-issue, Haggar challenges the instruction that evidence that other
employees were discharged should be considered for the questions of intent and punitive
damages. Haggar contends that the only relevant evidence was evidence regarding the
decision-maker who actually terminated Hernandez. In support, Haggar cites Zimlich, 29
S.W.3d at 70-71. We have already rejected Haggar's argument that Zimlich restricts the
evidence the jury can consider solely to the conduct of the decision-maker who made the
termination decision. We hold the trial court did not err in including the challenged
instruction concerning evidence that other employees were discharged. 

 Similarly, in its second sub-issue, Haggar challenges the trial court's refusal to
include its requested instruction that the jury was to disregard evidence involving former
Haggar employees concerning conduct that occurred after Hernandez's employment to
prove that the acts complained of were "in accordance with any habit, pattern, or practice
of Haggar." We have already determined that "other acts" evidence is admissible both to
show willful intent in support of exemplary damages, and to show a plan or scheme. See
Sturges v. Wal-Mart Stores, Inc., 39 S.W.3d 608, 614 (Tex. App.-Beaumont 1998), rev'd
on other grounds, 52 S.W.3d 711 (Tex. 2001). Thus, we hold the trial court did not err in
refusing Haggar's limiting instruction on question one.

 In its third sub-issue, Haggar challenges the trial court's refusal to include an
instruction on its defense of uniform enforcement of a reasonable absence control policy. 
We hold that Haggar's requested instruction on the uniform application of its absence
control policy was unnecessary. See Dallas County, 62 S.W.3d at 331-33 (finding trial
court did not abuse its discretion in refusing to submit requested instruction regarding
employer's defense of uniform application of reasonable absentee policy); Housing Auth.
v. Guerra, 963 S.W.2d 946, 954 (Tex. App.-El Paso 1998, pet. denied) (finding requested
instruction regarding employer's uniform application of non-discriminatory policy
unnecessary).

 In its fourth sub-issue, Haggar contends the trial court erred in failing to identify the
person(s) whose conduct as Haggar's "agent" could subject it to punitive damages. 
Haggar argues that because "other acts" evidence was improperly admitted, the jury was
impermissibly allowed to award punitive damages against Haggar for the acts of persons
for whose conduct Haggar was not responsible. This argument is related to Haggar's
argument, raised in several issues and sub-issues, that evidence of retaliatory motive and
malice was restricted to the discharge itself and the decision-maker who actually
terminated Hernandez. 

 As noted, we have already held that the trial court did not err in admitting the "other
acts" evidence. We have also rejected Haggar's argument that the holding in Zimlich
restricts the malice inquiry to the discharge and the state of mind of the person who made
the termination decision. See Zimlich, 29 S.W.3d at 70-71. We further note that the
challenged language tracks the applicable language regarding assessment of exemplary
damages against a master for the acts of a servant in the Pattern Jury Charge. See Comm.
on Pattern Jury Charges, State Bar of Tex., Tex. Pattern Jury Charges PJC 110.35
(2000). We hold the trial court did not abuse its discretion in submitting question four.

 In its fifth sub-issue, Haggar challenges the instruction to award past and future
compensatory damages for "other non-pecuniary losses," without defining what other types
of non-pecuniary damages may be awarded. We note that the challenged language
follows the language on damages as provided in the Pattern Jury Charge. See id. at PJC
110.28. We hold the trial court did not abuse its discretion in failing to define "other non-pecuniary losses" in question three.

 In its final sub-issue, Haggar challenges the trial court's refusal to include a "clear
and convincing evidence" standard of proof in the malice question. However, because this 
cause of action accrued before September 1, 1995, and the complaint was filed after
September 1, 1993, it is governed by the former statute. See id. at PJC 110.31 cmt. (citing
former Tex. Rev. Civ. Stat. Ann. art. 5221k, § 7.01. Act of May 14, 1993, 73rd Leg. R.S.,
ch. 276, § 7, 1993 Tex. Gen. Laws 1287, 1292). Thus, under the applicable law, the
pertinent standard of proof of malice required to support punitive damages is
preponderance of the evidence, not clear and convincing evidence. Id. Accordingly, we
hold the trial court did not err in refusing the requested instruction regarding a "clear and
convincing evidence" standard. 

 We overrule Haggar's seventh issue. The judgment of the trial court is AFFIRMED.



 

 LINDA REYNA YAÑEZ

 Justice






Opinion delivered and filed this the

21st day of August, 2003.

 
1. Retired Justice J. Bonner Dorsey assigned to this Court by the Chief Justice of the Supreme Court
of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. Zimlich involves a "whistleblower" claim. City of Fort Worth v. Zimlich, 29 S.W.3d 62, 65 (Tex. 2000). 
The standard of causation used in whistleblower cases is applicable in employment discrimination cases. See
Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Dep't of Human Servs. v. Hinds, 904
S.W.2d 629, 635-36 (Tex. 1995); Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 667 (Tex. App.-Corpus Christi 1998, no pet.). 


3. Although this is a memorandum opinion, see Tex. R. App. P. 47.1, we note that the evidence
supporting retaliation includes much of the evidence which we have determined also supports the finding of
punitive damages. Such evidence is detailed in the section of this opinion addressing punitive damages. 
4. See Tex. Gov't Code Ann. §§ 554.001-.010 (Vernon Supp. 2003).
5. We note that in its reply brief, Haggar challenges the use of the terms "emotional pain and suffering," 
"inconvenience," and "loss of enjoyment of life" in question 3, paragraphs (2) and (3) concerning
compensatory damages. These terms were included, however, in Haggar's proposed jury questions and
instructions. Thus, any challenge to the inclusion of these terms was waived. See Tex. R. App. P. 33.1.